[Civ. No. 5624. First Appellate District, Division One.—May 31, 1928.]

CARSTEN HANSEN, Appellant, v. HANSEN & JOHNSON, CONTRACTORS, INC., et al., Defendants; WALTER J. GERDAU et al., as Executors, etc., Respondents.

John F. Barnett for Appellant.

Edward J. Lynch for Respondents.

KNIGHT, J.—Plaintiff appeals from a judgment rendered in favor of defendants as executors of the last will of Peter H. Johnson, deceased, in an action to recover $2,000 claimed to be due as a result of a real estate transaction had between plaintiff and Johnson. Respondents urged as defenses a denial of liability and the statute of limitations, and they also set forth two counterclaims. The trial court found against appellant on the merits of his action and held that the same was barred by the statute of limitations, and found against respondents on the merits of their counterclaims.

The controversy grew out of the following facts, which are without substantial dispute: Johnson, the deceased, and Hansen, were engaged in the contracting business under the corporate name of Hansen & Johnson, Contractors, Inc., and during their operations acquired considerable encumbered property. Hansen became indebted to Johnson on account of advances made by the latter from time to time in order to carry on the business, and the parties eventually decided to adjust their financial affairs and divide up the property. Accordingly, on February 25, 1915, pursuant to the terms of a written agreement which they entered into, a parcel of land on Filbert Street, San Francisco, carrying a mortgage of $12,000 in favor of one Crim, and another parcel not here involved, were conveyed to appellant, and all of his corporate stock was transferred to Johnson; and in addition appellant and his wife executed a promissory note in favor of Johnson for the sum of $9,000 secured by a second mortgage on the Filbert Street property. The note bore interest at six per cent, payable quarterly, and the principal matured in annual installments of $1,000 each. Said agreement also provided that appellant should assume and pay the indebtedness to Crim, including interest, and protect

and save Johnson harmless from any loss or payment on account thereof. On July 24, 1916, in accordance with an arrangement made between appellant and Johnson, appellant sold the Filbert Street property to one Smith, and as part payment of the purchase price Smith and his wife executed and delivered to Johnson their promissory note for the sum of $11,000, payable three years after date with interest at seven per cent, secured by a trust deed which was made subject to the first mortgage of $12,000 to Crim; whereupon and on the same day, July 24th, another and separate written agreement was entered into between appellant and Johnson substituting the Smith note of $11,000 for appellant's note of $9,000, and in consideration of the delivery to Johnson of the Smith note Johnson promised and agreed "that after there shall have been paid to him on account of the said principal the sum of $9,000, together with the interest on said $9,000, he will pay to the said Carsten Hansen all moneys received on account of the principal of said promissory note and that upon the payment to him of the interest accruing on the said $9,000 as the same becomes due, he will then pay to Carsten Hansen all interest received by him on account of the balance of $2,000 of said note belonging to Carsten Hansen," and Hansen agreed to accept payment of the $2,000 and interest as in said agreement provided. Simultaneously with the execution of this latter agreement a resolution was passed by said corporation which had the effect of ratifying and confirming said agreement, and provided, accordingly, that the Smith note should be made payable to Johnson and that the trust deed given as security therefor "be made to trustees designated by him (Johnson) for his benefit and that the said promissory note and trust deed shall be delivered to said Peter H. Johnson to be owned and held by him." In conformity with said agreement and resolution Hansen was released from liability on the $9,000 note to Johnson and the Smiths' note for $11,000 was made out directly to Johnson and the deed of trust securing the same was made out directly to trustees for Johnson, thus giving Johnson complete control over the collection of the $11,000.

The Smiths remained in possession of the property from July, 1916, to July, 1917, during which time they did not pay the taxes, the insurance premiums, the accrued interest

on the first mortgage, or the interest on the second deed of trust. As a consequence Johnson's security was being constantly diminished because the items mentioned constituted liens on the property which were prior to the lien created by Johnson's deed of trust; and under the circumstances he was entitled to cause a sale of the property under his deed of trust, but instead of doing so, the Smiths, on July 14, 1917, conveyed the property to Johnson in consideration of which Johnson canceled the Smiths' note for $11,000 and granted them an option to repurchase the property within one year for the sum of $21,000; but up to April, 1918, they failed to exercise the option, at which time Johnson sold the property for $20,000 to one Kathrine Gallwey, subject to the outstanding Smith option.

The division of the interests of Johnson and Hansen under the corporate name did not end their business association, however, and for several years thereafter they engaged in other joint enterprises during which time they were in frequent personal touch with each other. Appellant claims, however, that he did not learn of the sale of the Filbert Street property until the fall of 1921, more than four years after the conveyance thereof to Johnson by the Smiths. In this regard appellant testified that he had "heard it was sold," but how or exactly when he gained the information does not appear. In the fall of 1921, however, he called upon his present attorney, who had acted for both parties in the settlement of their affairs, for the purpose of ascertaining the circumstances of the sale and was at that time told, so appellant claims, that the property had been sold but that "he need not worry about the $2,000 because Mr. Johnson was a man who would pay him all right." During that same year appellant and Johnson continued to do business together, the evidence in this regard showing that as late as 1921 appellant talked with Johnson and at that time delivered to him certain promissory notes for money he had borrowed, but at no time did he bring up the matter of the sale of the Filbert Street property or the alleged indebtedness from Johnson to him now sued upon. The year following, to wit, in May, 1922, Johnson died, and notice to creditors was published in July, 1922, but appellant did not present his claim against the estate until May 4, 1923, a few

days prior to the expiration of the 10 months' period allowed by law for the presentation of claims.

██ The theory upon which appellant seeks a judgment for $2,000 against Johnson's estate, as stated by appellant, is this: That the agreement of July 24, 1916, "created a voluntary or express trust under which Johnson held the (Smith) note and trust deed for the benefit of Hansen and to collect for Hansen the $2,000 belonging to him," and that the "surrender and cancelation of the Smith note by Johnson in consideration of the conveyance to him of the property which was security for the note was a breach of trust, and made him liable to Hansen for money had and received for Hansen's benefit to the extent of $2,000 which belonged to Hansen with interest thereon." In other words, appellant contends that the implication arising from the agreement is that it was Johnson's duty to sell the property at trustees' sale if the Smiths defaulted in carrying out the terms of their note and deed of trust, and that the acceptance by Johnson of a deed from the Smiths instead of selling the property at trustees' sale was equivalent to collecting the full amount of the Smith note; and, consequently, immediately upon the acceptance of the deed Johnson became liable to appellant for the amount due appellant thereunder.

We find nothing in the agreement to justify such construction. Its terms, reasonably construed, were that appellant was to receive nothing until "after there shall have been paid to him (Johnson) on account of said principal the sum of $9,000 together with the interest," and it was shown without conflict that Johnson never did receive the full amount of his $9,000 (which represented the original indebtedness from Hansen to Johnson) out of the property. The evidence on this point discloses that, although the property eventually sold for a gross price of $20,000, the deduction of the $12,000 first mortgage, accrued interest, taxes, insurance premiums and expenses of sale, reduced the net amount received by Johnson to a sum approximately $2,800 less than the $9,000 due him.

Appellant makes no claim of fraudulent conduct on Johnson's part or that he was in any manner neglectful in selling the property or in trying to obtain the best price therefor. With respect thereto the evidence shows that Johnson made every reasonable effort, through real estate agencies and by

granting the Smith option, to obtain the best price possible, but that $20,000 was all that could be secured, and furthermore, the fact that the Smiths were unable to sell the property for $21,000 during the 18 months they were entitled to dispose of the same, and that during the time they held legal title thereto they could not pay the taxes, interest or insurance thereon clearly indicates that they overestimated the value of the property when they purchased the same for $23,000.

Nor is there anything in the agreement which imposed a duty upon Johnson to resort to the expense and delay of foreclosure proceedings instead of accepting a deed from the Smiths; and the fact that the agreement provided that the Smith note should be made payable directly to Johnson and that the obligation under the deed of trust should run directly to Johnson's trustees shows that it was doubtless the intention of the parties to vest Johnson with complete title to and control over the promissory note and trust deed; and, consequently, in the absence of express provision in the agreement to the contrary, he was entitled to exercise his best judgment as to the most profitable method of realizing on the outstanding indebtedness. And the results would seem to show that his judgment was wisely exercised because, aside from the matter of the expense and delay of a forced legal sale, the parties under such sale would not have received the benefit of the services of the real estate agencies employed by Johnson to make a private sale. But, in any event, in the absence of charges of fraud or neglect, we think that under the circumstances appellant is without legal ground for complaint.

Evidently, to warrant a judgment in favor of appellant for money had and received it would have been necessary for the trial court to have found as a fact that Johnson had received $2,000 belonging to appellant, and as shown there is no evidence whatever to support such a conclusion; nor does the evidence show any breach of trust on Johnson's part. Therefore, in our opinion, the trial court properly entered judgment in favor of respondents.

The case of *Wagner* v. *Wedell*, 3 Cal. App. 274 [85 Pac. 126], upon which appellant seems to rely, is materially different in its facts from the one before us. In that case there were two mortgages, the amount of the first being

$1,500 and the second $1,000. The second mortgagee assigned his mortgage to the first mortgagee under a power of attorney and an agreement whereby the first mortgagee agreed to foreclose both mortgages and bid in the property for enough to cover the total sum due. Instead of complying with the agreement to foreclose he acquired title from the mortgagor, satisfied both mortgages of record and then sold the property to others accepting in payment $1,000 cash and two notes secured by mortgages, one for $1,500 and the other for $1,350; and he refused to pay the second mortgagee the amount due on his mortgage. It was apparent, therefore, that there was not only a lack of good faith on the part of the first mortgagee but a clear breach of an express trust. There are no such circumstances here.

In view of the conclusion we have reached upon the question of the merits of appellant's cause of action a discussion and decision upon the issue of the statute of limitations or upon the other points urged by respondent in support of the judgment are deemed unnecessary.

The judgment is affirmed.

Parker, J., *pro tem.*, and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1928.

All the Justices present concurred.