ROLLA PRODUCE COMPANY, a Corporation, Appellant, v. AMERICAN RAILWAY EXPRESS COMPANY, a Corporation, Respondent.

Springfield Court of Appeals, December 16, 1920.

1. **APPEAL AND ERROR:** Compulsory Reference Harmless, Where Judgment Would Have Been Same if Tried to a Jury. A compulsory reference was harmless, where, had the case been tried by a jury and the court at the close of the evidence rightly directed a verdict, the result would have been the same.

2. **CARRIERS:** Carrier's Liability on Delivery to Consignee, Without Collection Under C. O. D. Contract, is Contract Amount. Where goods were shipped under C. O. D. contract, the carrier's obli-

gation arises from contract, and if it can be sued in conversion for delivery without making required collection, the amount of recovery will be the contract amount, and not the value of the property.

3. ———: Not Liable for Delivery of C. O. D. Shipment Without Collection, Where Payment was Made Direct to Consignor. Where goods were shipped C. O. D., requiring carrier to collect specified amount for delivery to consignee, the carrier was not liable, though it delivered goods without making the collection, where amount to be collected was thereafter paid by consignee direct to consignor.

4. ———: Consignee, to Whom Carrier Delivers C. O. D. Shipment Without Collection, Must Either Return Goods or Make Payment. Consignee, who receives C. O. D. shipment without payment of specified amount to carrier, is required to either return the goods or pay therefor.

5. PAYMENT: Acceptance of Check, Accompanied by Statement of Items for Which Payment Was Made, Constituted Payment of Items. Where buyer's check to seller was accompanied by an itemized statement showing that check was in payment for particular goods, seller's acceptance of check constituted payment for such goods notwithstanding seller's unliquidated claim for damages growing out of prior shipment, since buyer had a right to designate on what terms it was making payment, even if other items were owing by it to seller.

Appeal from Phelps County Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Holmes & Holmes* and *F. H. Farris* for appellant.

(1) A shipment of goods by C. O. D., any failure of the common carrier to deliver the goods to the proper party, or to collect the amount due before delivery, makes the carrier guilty of conversion and liable to the shipper of the goods for the amount it contracted to collect. Brockman Com. Co. v. Mo. Pac. Ry. Co., 188 S. W. 920. (2) The doctrine of ratification, of course, obtains with respect to cases of conversion against carriers as in other cases. But it is the rule in such cases that the consignor, before he can be said to have ratified, must have had

information that the carrier had made delivery of his goods without the collection of the money, and with such knowledge had accepted benefits as part compensation for the goods from the person to whom the wrongful delivery was made by the carrier, and has appropriated such benefits to his own use. Under a showing of that kind, then the consignor will be regarded as having abandoned his original purpose of requiring payment on delivery and to have ratified delivery of the goods as made. 1 Hutchinson on Carriers (3 Ed.), sec. 183; Railway v. Kinchen & Company, 103 Georgia 186, S. E. Rep. 816.

*Lorts & Breuer* for respondent.

(1) "The terms, 'examining a long account' are used by the statutes in the sense in which they are ordinarily understood and do not imply either an account stated or a bill of particulars, but refer to a series of charges made at various times covering transactions between the parties or to an account kept by one party or the other." Reed v. Young, 248 Mo. 606. (2) Payment made by person other than the original debtor, on behalf of the debtor, will constitute a valid payment and operate as a discharge of the indebtedness, even though payment was made by a third person who was under no obligation to satisfy the indebtedness, if accepted by the creditor as payment, even though such payment was made without the request or assent of the debtor. 1 C. J. 535; 22 A. & E. Enc. of Law (2 Ed.), 535. The inference is that the payment being for debtor's benefit was done with his consent, or if without his knowledge at the time that it was ratified by him afterwards, and such a payment would bar any subsequent action by the creditor. (3) A referee is not bound to give and refuse instructions but may follow the course pointed out by section 1972, R. S. 1909. 1 McQuillan's Mo. Prac., sec. 711; Suddouth v. Robertson, 118 Mo. 286. Declarations of law serve only to show the theory of the court as to the law, and where such theory is correct and there is any evidence tending to support the finding, such finding will not be disturbed.

State ex rel. v. Staed, 143 Mo. 248; Webber v. Insurance Co., 35 Mo. App. 581. As the chief purpose of giving and refusing declarations of law is to show merely upon what theory the court tried the cause, the same necessity for instructions does not exist, as if the case were tried by a jury. White v. Mo. Pac. R. R. Co., 19 Mo. App. 400.

STURGIS, P. J.—By this suit plaintiff seeks to recover one thousand dollars damages for that defendant, a common carrier, delivered to the consignee a C. O. D. shipment of eggs without collecting that amount from the consignee as required by the terms of the shipping contract. The plaintiff was doing business at Rolla, Missouri, and there delivered to defendant fifty-seven cases of eggs to be transported and delivered to John B. Tyler & Company at Chicago under a contract requiring defendant to collect for plaintiff one thousand dollars on delivery of such eggs. The defendant admits receiving the eggs under the C. O. D. contract mentioned; that it transported the eggs as required and delivered same to the consignee without collecting the specified amount. Its only defense is that while it failed to collect from the consignee the sum of one thousand dollars as it should have done, yet the consignee made payment in full for such eggs direct to plaintiff, and plaintiff accepted such payment—hence no damage was suffered by plaintiff.

The plaintiff denied such payment and at the trial sought to show that the money paid by the consignee, Tyler & Company, which defendant claims it paid plaintiff for the eggs in question, was in truth and in fact due and owing by Tyler & Company to plaintiff on prior transactions and was merely a payment on an open account on which was due more than the amount in controversy. The evidence disclosed, however, that the only prior indebtedness claimed by plaintiff as due it from Tyler & Company was an unliquidated and disputed claim for damages for that Tyler & Company substituted inferior eggs for eggs which that company was handling in cold storage for plaintiff. While plaintiff and Tyler & Company had been doing business with each other for a

long time and many shipments of butter and eggs had been made by plaintiff to Tyler & Company on commission or outright sale, yet all such transactions which had formed the book account of either party had been settled and paid before the shipment of the eggs now in controversy. The prior indebtedness, if any, of Tyler & Company to plaintiff was for unliquidated damages growing out of tort rather than contract and never appeared in the book account which showed the merchandise sold or consigned by plaintiff to Tyler & Company and payments made thereon.

The case was tried by a referee whose finding for the defendant was approved by the trial court and the first point raised by plaintiff's appeal is that the court erred in making a compulsory reference of the case over plaintiff's objections. It is very doubtful if this case was a proper one for compulsory reference (Elks Investment Co. v. Jones, 187 S. W. 71), but if the judgment is for the right party and is the only judgment permissible under the facts, then such error is harmless. Had the case been tried by a jury and the court at the close of the evidence had rightfully directed a verdict for defendant the result would be the same and plaintiff is not harmed by the method of trial.

A careful consideration of the case convinces us that the evidence, largely documentary and practically undisputed, shows that plaintiff received and accepted payment for the eggs in question direct from Tyler & Company, the consignee. We need not discuss at length the nature of the liability incurred by a carrier who delivers goods to the consignee without collecting the amount specified in the C. O. D. contract. Even if such carrier can be sued in conversion as some authorities hold the obligation arises from contract and the amount of recovery is the contract amount and not the value of the property. [Fowler Com. Co. v. Railroad, 98 Mo. App. 210, 71 S. W. 1077; 2 Hutchinson on Carriers (3 Ed.), sec. 728.] The carrier becomes the collecting agent of the shipper and guarantees such collection in case the goods are delivered. If the goods are actually paid for

by the consignee direct to the consignor instead of being paid through the carrier as agent, the result is the same and obviously there is no liability of the carrier. [1 Hutchinson on Carriers (3 Ed.), sec. 183; Witt v. Railroad, (Tenn.) 41 S. W. 1064; Rathbun v. Steamboat Co., 76 N. Y. 376.] Such payment by Tyler & Company was not a voluntary payment of a third party's obligation but was a payment of their own debt to plaintiff since, having received these eggs from plaintiff, the law would clearly compel payment for same or a return of the eggs. [2 Hutchinson on Carriers (3 Ed.), sec. 730.]

The evidence we think conclusively shows a payment for these eggs by the consignee Tyler & Company to the plaintiff. The fifty-seven cases of eggs in question were a part of a purchase of one hundred cases by Tyler & Company at 62½ cents per case, the other forty-three cases being shipped by freight. The shipment by express now in question was delivered to Tyler & Company January 10, 1919. The value was $10.50 less express charges of $52.54. Plaintiff had drawn a draft for $775 on Tyler & Company which it paid, leaving a balance due plaintiff of $222.46. An itemized statement of this transaction was sent to plaintiff on January 13, 1919. This statement was short one case of eggs, lost in transit, and defendant tendered in court the value of the shortage. The freight shipment of forty-three cases was received by Tyler & Company January 16, 1919, the net proceeds of which amounted to $702.29, making Tyler & Company then indebted to plaintiff $924.75. On January 22, 1919, plaintiff made another shipment of butter and eggs to Tyler & Company amounting to $1225.72, making the total indebtedness $2150.47. Tyler & Company paid this balance by paying a draft for $1200 drawn by plaintiff, charge for freight, etc., $55.34, and by sending plaintiff their check for $895.13, which plaintiff received and cashed. This check was accompanied by an itemized statement showing the items of debit and credit on the shipments of eggs and butter to Tyler & Company, including the eggs now in controversy, and the check cover-

ed the balance due on such account. The plaintiff in receiving this check and the statement accompanying it was informed and knew that the check then received paid the balance due it on the three shipments of merchandise made in January, 1910, to Tyler & Company, one of which shipments was the fifty-seven cases of eggs now in controversy. The plaintiff at that time had only an indefinite claim for damages growing out of the eggs handled in cold storage during the previous summer and knew that Tyler & Company were disputing any such claim. Tyler & Company had a right to designate on what items they were making payment, even if other items were owing by them to plaintiff. [21 R. C. L., pp. 88 and 112; Beck v. Haas, 111 Mo. 264, 20 S. W. 19; Brady v. Hill, 1 Mo. 315.] Further proof to this effect is that plaintiff made a further shipment of butter and eggs to Tyler & Company February 8, 1919, drawing a draft for $400 against same which when paid by Tyler & Company left the account $15.95 overdrawn. Thereupon Tyler & Company again rendered plaintiff a full itemized statement covering the shipment now in controversy and all subsequent shipments and showing a balance due them on these shipments of $15.95. This amount *plaintiff paid to Tyler & Company* by its check dated February 13, 1919. This conclusively shows a settlement of the merchandise account between plaintiff and Tyler & Company including the shipment of eggs now in controversy and left open and unmentioned the prior claim for damages, if any, growing out of the intimated rather than claimed tort of Tyler & Company in substituting inferior eggs for those held in cold storage during the previous summer. Having thus received payment from Tyler & Company for the shipment of eggs which defendant delivered to that company without collecting in advance, plaintiff cannot again collect from defendant. This conclusion makes harmless the other errors complained of and same need not be noticed. The judgment of the trial court is correct and is affirmed.

*Farrington* and *Bradley, JJ.*, concur.