SAM C. STEPHENSON ET AL., RESPONDENTS, v. AMERICAN NATIONAL INSURANCE CO., APPELLANTS.—78 S. W. (2d) 876.

Kansas City Court of Appeals. January 7, 1935.

No. 18150.

*Rieger & Rieger* for respondents.

*E. M. Jayne* for appellant.

TRIMBLE, J.—On April 25, 1927, the appellant, American National Insurance Company, issued and delivered to one of the plaintiffs, Missouri State Teachers Association, what is termed a "Master Policy" of insurance (otherwise called a group policy), No. G-4600, whereby it granted insurance to such members of the Missouri State Teachers Association as elected to carry what, for convenience, we will call individual insurance, and who paid thereon the required premiums. This master policy created term insurance which would expire on June 1, 1928, but on that date could be renewed for a like period of one year, upon payment of the requisite premiums for that year and so on yearly thereafter so long as the premiums for the next year were paid. It was thus properly renewed until noon of June 1, 1932. Said master, or group policy No. G-4600 promised, among other things, to pay, in complete discharge of liability to any person injured, the amount payable in the event of said person's death if

said person has, during the existence of said master policy, and likewise of his certificate, suffered, for a period of at least six months, total disablement which began before the person injured had attained the age of sixty years. Such total disablement "must be shown to be such as to justify the presumption that it would continue throughout the entire lifetime of the said person and during that time wholly prevent the said person from pursuing any occupation for wages, compensation or profit." Of course, the policy required notice or "due proof" of these matters, but as no question is raised as to the furnishing of notice, no mention is made of the requirement of such notice.

The plaintiff, Sam Charles Stephenson, was, on June 1, 1929, insured by certificate No. 2523, issued by authority of said master policy, in the sum of $5000, to be paid to him on the terms and conditions in reference to disablement as has been hereinabove stated.

Alleging that he is now (April 15, 1933), forty-nine years of age, and, during all the times since May 15, 1932, he was and is totally and permanently disabled for life as hereinbefore set out and described, he brought this action against the American National Insurance Company, appellant herein, for said sum of $5000.

It seems that on the twenty-first of April, 1932, a master policy No. G-101 was by another company, the North American Life Insurance Company of Chicago, issued to the Missouri State Teachers Association, and under said master policy No. G-101 a policy or certificate No. 1057 was issued to Sam C. Stephenson for $5000 "payable if the member becomes totally and permanently disabled before age sixty," such payment, however, was to be in certain installments chosen by the member, the number and amount of which to be according to a certain table named in the paragraph entitled "Modes of Settlement."

On November 3, 1933, after suit was brought against the American National Insurance Company it, in an answer filed, asked the court to cause the North American Life Insurance Company of Chicago (being the other, or second, company hereinabove mentioned), to be made a party defendant; and in compliance with the request of said first named defendant, the American National Insurance Company, the court made said North American Life Insurance Company of Chicago a party defendant, and ordered a writ or summons for it, all of which was done.

Thereupon, in accordance with that situation· brought about by the first named defendant, an amended petition was filed in which insured, Stephenson, and Missouri State Teachers Association are plaintiffs and both of the aforementioned insurance companies were defendants.

Said amended petition, omitting allegations as to plaintiff Stephenson's business and residence, and the incorporation of the other parties to the suit, contained the following allegations:

"Plaintiffs further state that on June 1, 1929, defendant, American National Insurance Company, made, executed and delivered its certificate of insurance No. 2523, dated of that date, whereby in consideration of the payment by plaintiff Stephenson to defendant, American National Insurance Company, of premiums, dues and assessments said defendant on said date delivered its said policy to plaintiff Stephenson, in which policy it recites that said defendant insured said plaintiff in sum of $5000, to be paid to the beneficiary of said plaintiff upon the death of said plaintiff or payable to said plaintiff upon his total permanent disability, upon due proof furnished to said defendant that said plaintiff has suffered, subsequent to the date of said May 15, 1932, for a period of six months, total disablement, and before this plaintiff attained the age of sixty years, and that said total disablement be shown to be such as to justify the presumption that it would continue throughout the entire subsequent lifetime of plaintiff Stephenson, and during that time, wholly prevent plaintiff Stephenson from pursuing any occupation for wages, compensation or profit. It is further recited in said policy that the same is subject to the terms and conditions of defendant, American National Insurance Company, group policy No. G-4600, executed and delivered by said defendant insurance company to the plaintiff association, with which association plaintiff Stephenson had at all times herein mentioned group insurance relationship. Said policy No. 2523 is herewith filed and made a part of this petition.

"Plaintiff Stephenson further states that on May 15, 1932, while said policies No. 2523 and No. G-4600 were in full force, said plaintiff, by reason of blood disease, disease of the leg, mental disease, chronic nephritis and diabetes was and became on said date totally and permanently disabled thereby and at all times since said date and now, he was and still is totally and permanently disabled, and said total disablement was and is such as to justify the presumption that said disablement will continue throughout the entire subsequent lifetime of this plaintiff, and during all the times since May 15, 1932, wholly prevented him from pursuing any occupation for wages, compensation or profit and will so disable him during his remaining lifetime; that he is now of the age of forty-nine years; that he further states that at all of the times herein mentioned since June 1, 1929, he was and still is in good standing with and a member of plaintiff, Missouri State Teachers' Association, and was during said times a person having through defendant, American National Insurance Company, group insurance relationship with said plaintiff association under group policy No. G-4600, and has at all times paid all his dues, costs and premiums due to said plaintiff association and to said defendant,

American National Insurance Company. That said plaintiff association was at all times herein mentioned in good standing with defendant, American National Insurance Company, and he has paid, kept and performed all of the terms of said group policy No. G-4600 and the terms of said policy No. 2523 and said plaintiff association has also kept and performed all of its agreements and terms of said group policy No. G-4600 and policy No. 2523.

"Plaintiffs further state that on April 21, 1932, plaintiff association secured from defendant North American Life Insurance Company of Chicago, its group life policy No. G-101, which said policy by its terms became effective at noon June 1, 1932, and that said policy was secured by said plaintiff association to continue insurance on the lives of such members of said plaintiff association as desired to continue carrying such group insurance; that on said June 1, 1932, plaintiff Stephenson was a member of said association in good standing; that thereupon on said June 1, 1932, said defendant, North American Life Insurance Company, made, executed and delivered its policy and certificate to plaintiff Stephenson, said certificate being No. 1057, by the terms of which and in which certificate it recites that said defendant agrees to pay to the beneficiary of plaintiff Stephenson, in event of his death, the sum of $5000 and if the said Stephenson becomes totally and permanently disabled before he reaches the age of sixty years that said defendant would pay to him the said sum of $5000 and, that upon receipt of due proof said plaintiff Stephenson has become totally and permanently disabled by bodily injury or disease so as to be wholly prevented thereby for life from engaging in any occupation or business for remuneration or profit and that such total disability already continued uninterruptedly for at least six months, said company, to-wit: North American Life Insurance Company, will waive further payment of premium as to such Stephenson and will pay in full settlement to said Stephenson under said policy the sum of $5000. That said policy and certificate No. 1057 is herewith filed and made a part of the petition.

"Plaintiffs further state that on June 1, 1932, while said policies No. 1057 and No. G-101 were in full force said plaintiff Stephenson by reason of blood disease, disease of the leg, mental disease, chronic nephritis and diabetes was and became on said date totally and permanently disabled so as to be wholly prevented thereby for life from engaging in any occupation or business for remuneration or profit and that such total disability has since said date already continued uninterruptedly for a period of more than six months; that plaintiff Stephenson is now the age of forty-nine years; that at all of the times herein mentioned since June 1, 1932, he was and still is in good standing with and a member of plaintiff association and was during said times and still is a person having, through defendants, North American Life Insurance Company of Chicago, group insurance

relationship with said plaintiff association under group policy No. G-101 and has at all times paid his dues, charges and premiums to said plaintiff association and to said defendant, North American Life Insurance Company of Chicago, and plaintiffs have kept and performed all the terms of said group policy No. G-101 and of certificate No. 1057; that plaintiff Stephenson made due proofs to each of said defendants of his said disabilities under the terms of said certificates Nos. 1057 and 2523, but defendant denied liability under said policies and said certificates.''

It will be observed that the first mentioned master policy, and the individual certificate thereunder to Stephenson for $5000, issued by appellant American National Insurance Company, granted insurance which would· expire at noon June 1, 1932. But the insurance granted by the master policy and the individual certificate to Stephenson for $5000, issued by the other or second named company, the North American Life Insurance Company of Chicago, did not begin or become effective *until* that date. And the amended petition correctly stated the terms and conditions of the master policy and individual certificates issued respectively by the two defendant companies, which were practically the same except as to the time covered and also except that the last named policy provided that the $5000, instead of being paid in one lump sum as the first named policy provided, would be paid in installments as hereinabove stated.

There is no contention over the fact that the insured, Stephenson, paid all the premiums required of him by the American National Insurance Company (and the other company too for that matter), and that he was a member in good standing of the Missouri State Teachers Association, and, in this respect, fully entitled to take out the insurance issued to him, at least in so far as the insurance granted by the original defendant, the American National Insurance· Company, is concerned.

As will be readily apprehended, the *main* contention, as between the two defendant insurance companies themselves, was as to when the alleged total disablement of insured Stephenson *began* or *occurred*. If it was *after* June 1, 1932, the question of whether the insurance sued for should be paid or not, was not a matter which concerned the first named company, for its insurance had expired on that date. But if the alleged disablement took place *before* June 1, 1932, then the second named defendant, the North American Life Insurance Company of Chicago, could not be held liable in any event, because the disablement sued for arose *before* its insurance had become effective. Each defendant filed a separate answer, and plaintiff filed reply to each answer. Thereupon a trial was had, and at the close of all the evidence, the second named defendant, the North American Life Insurance Company of Chicago, asked an instruction calling for a directed verdict in its favor. The record shows that.

the court did not actually direct the verdict sought, but merely "announced his intention" to mark the instruction "given" and to give the same to the jury; but, without waiting for the court to mark said instruction "given," plaintiff asked leave to, and did, take "an involuntary nonsuit" as to the defendant North American Life Insurance Company of Chicago. This, of course, immediately let this defendant out of the case, and it did not thereafter appear in the case. Under instructions, the case was then submitted to the jury solely against the first named defendant, the American National Insurance Company. The jury returned a verdict for the plaintiff Stephenson in the sum of $5000, and from a judgment rendered thereon, the sole remaining defendant appealed.

Point is made that the court erred "in permitting the joining of the two defendants" in the amended petition and that the court also erred in overruling appellant's demurrer to said amended petition. As to this last mentioned, so-called, error, it is only necessary to say that when the demurrer was overruled, appellant did not stand thereon but answered over and introduced evidence in its behalf. Hence, such demurrer was waived. Moreover, the bringing in of the second named defendant was done at appellant's *own request*. Having induced the court to erroneously order the other defendant, the North American Life Insurance Company of Chicago, to be brought into court and impleaded as a defendant, appellant cannot now take advantage of an error which it invited. Furthermore, the amended petition sufficiently stated a cause of action in favor of insured against appellant; and also in separate paragraphs, pleaded a cause of action against the other defendant (the North American Life Insurance Company of Chicago, brought in at the instance of appellant), based upon a different contract. Although the nonsuit above mentioned is denominated in the record as an "involuntary" nonsuit, yet, as a matter of law, the nonsuit taken was *voluntary* because the peremptory instruction for a directed verdict, asked by the North American Life Insurance Company of Chicago, was not in fact given. [Hogan-Sunkel Heating Co. v. Bradley, 7 S. W. (2d) 255.] Hence, as stated before, when the nonsuit was entered as to the North American Life Insurance Company of Chicago, that defendant passed out of, and was no longer in, the case. So that the allegations of the amended petition as to said last named defendant, became mere surplusage, and, so far as we can see, they were in no way harmful to the appellant. But, even if by the widest stretch of the imagination of an alert and apprehensive litigant, they might be thought harmful, it was a situation unnecessarily brought about by that litigant itself, appellant here, in having the North American Life Insurance Company of Chicago brought into the case. Appellant did not need the presence of said defendant in the case in order to make all the defense appellant desired to make in its own behalf. If the insur-

ance sued for did not cover plaintiff Stephenson's alleged disablement, that would release appellant, regardless of whether its invited codefendant could be allowed to say its policy did not. On the other hand, if appellant's policy *did* cover insured's alleged disability, then it was immaterial what became of said codefendant. Discharging it from the case would not affect appellant's liability. Hence there is nothing in the contention, even had it been true, that "the failure of defendant North American Life Insurance Company of Chicago, to state a defense to said petition *ipso facto* relieved appellant of any liability under the petition."

Although appellant's instruction in the nature of a demurrer (which was refused by the court and of which error is claimed), did not specify that there was no evidence to show that insured was totally disabled, or that insured's total disablement or disability began or occurred during the existence of appellant's policy, yet in view of what is said in point 5 of the brief, to the effect that "the plaintiff failed of proof with respect to appellant," and its "demurrer to the evidence should have been given. Any finding that Stephenson was suffering 'total disablement' prior to June 1, 1932, is based on speculation and conjecture only," we deem the point raised and made specific enough to call for a ruling thereon, although the objection argued in said point 5, goes to the *character* of the evidence on that feature rather than that *no* evidence exists in regard to it.

In order that the evidence offered in plaintiff's behalf, to support has cause of action against appellant, may speak for itself, it is here set forth, practically in full:

Plaintiff testified:

"I was fifty years of age the sixth of last April. In 1932 I was superintendent of schools at Ludlow, in Livingston County, about seventeen miles northwest of Chillicothe. I taught there two terms, beginning in September, 1930. The second term ended May 20, 1932. I am a graduate of the University of Missouri, department of agriculture, of the year 1909. Since that time I have followed the business of farming and teaching school. There were two high school and two grade school teachers at Ludlow. I was the only man teacher in the system and in the fall of the year I would coach basket ball. At the close of the school year of my second term at Ludlow, May 20, 1932, you might say the entire last week, or the entire last two weeks, my health was in a shape that it was very difficult for me to finish school, but school was so near out that I just simply went ahead and fought it through anyway rather than ask for a substitute. I noticed the worst breakdown about the fifteenth. The thing that I noticed more than anything else was the unusual amount of urination and weakness. I had to get up and leave before the baccalaureate sermon was over on that account. It was a great deal of bother to me at the last part of the school year, the fact that I

had to go out to the toilet pretty often. Of course, now, the first two periods, I had two classes come right together and I usually managed to pull through those two classes of a morning. It was pretty hard on me but I got by it some way. The thing that bothered me was the desire to urinate. The pains were from the bladder. These two classes consumed an hour and twenty minutes. I had a period off just before dinner and would usually eat my dinner and go back early during the noon hour. My agriculture class came the first thing after dinner. When I would get through I would often go down to the house, it was only about a block, and lie down and rest. I did not work on Saturday, only make out examination papers or grade them. From the first of May until the close of school, I would stay at my room most of the time on Saturday. It had always been my method in teaching to stand on my feet; the latter part of the school year I didn't feel strong enough and sat down in a chair or on the laboratory table. The graduating exercises were Thursday night. There was nothing to do on Friday when school closed and I spent Friday laying in bed most of the time, resting up. I stayed about the house much of the time until I left to come to Kirksville. I felt extremely weak during the entire month of May. It was on Sunday, the twelfth day of June, that I came to Kirksville. My purpose in coming to Kirksville was I could live here as cheap as I could there and I thought when I first came down here that I might take some summer work at the Teachers' College and I figured on taking a few osteopathic treatments at the free clinic. I went over to the college and talked to a man, I don't remember his name, on Monday, the thirteenth, that was the last day you could register for summer work. I did not enter school.

"Q. Why? A. Well, I just didn't feel like I was hardly able. I didn't know whether the man that I talked to could see that or not, but anyway he didn't seem to encourage me to start in at that time.

"I stayed in Kirksville until the forepart of October of that year. When I left Kirksville, I first went to Chillicothe and stayed a day or two; went on through Ludlow, staying there about an hour, then to Polo, Missouri, and stayed over night there, from there to Richmond and spent part of the day there. I went to see my brother at Richmond. I then went back to Polo and from there to Lawson and then I went to Elmira to my cousin's, B. B. Stephenson. I stayed there a couple of days, then went into Caldwell County to a brother-in-law's and stayed there two weeks and then to a cousin by the name of Jeff Utt and stayed there three weeks and then to another cousin, named Rippey, at Lawson and stayed about two days and from there late in December, 1932, I came back to Kirksville. All the places I visited were on the farm. I didn't pretend to do any work. They wouldn't have let me if I had tried to. I was just merely visiting with them. When I came to Kirksville in June,

1932, I took a few osteopathic treatments at the free clinic. I don't know just how many I did take, probably fifteen or twenty during the summer. It didn't seem to be doing me a great deal of good. I have one sore on my leg now. That has been there since the latter part of June, 1933. . . .

"There was one sore developed along about the fifteenth of May, 1932, and I have had some kind of a sore on my legs ever since, up to within the past six months. It was on the inside of my right leg. After the first of December, 1932, I had a sore on the other leg, but it never got nearly so bad. I don't know how they developed. They just seem to come there. A scab formed and when it was removed it kept getting worse. They run more or less. The leg was swollen. The one that I had on the fifteenth of May, 1932, is now healed. I couldn't tell that walking had any effect on those sores. I never suffered any bad pains from them.

"In May, 1932, my appetite was stronger than usual and that condition existed until the present time. My weakness has continued since then also. Dr. John Crank, who now has an office at Braymer, was my doctor at Ludlow. Since I came to Kirksville, Dr. R. O. Stickler has been my personal physician and Dr. Ellis has also examined me. The first time I went to the hospital was April 21, 1933. I stayed until May 18th and went back about the twenty-fifth of June, 1933, and I have been there since that time. I don't remember quite as well as I did. My weight in January, 1932, was about 165 pounds. It was about 150 pounds on May 20, 1932. It is now about 140 pounds."

It was shown that subsequent to May 15, 1932, insured wrote and signed checks drawn on a bank in Kirksville, and that he made some slight effort to obtain employment to teach school, but without success.

Dr. Crank, a witness offered in plaintiff's behalf, testified:

"I live at Braymer. I lived at Ludlow about four years. I am an osteopathic physician, graduating in 1931. I started practicing at Ludlow. I became acquainted with Sam Charles Stephenson in Ludlow. I first met him in 1931. I practiced in Ludlow from that time until after June 1, 1932. I met him professionally, August 16, 1931. I first treated him on that day. The last time I treated him was the latter part of May, 1932. I treated him for a kidney condition known as Bright's disease. He had dropsy and diabetes mellitus. Bright's disease is a kidney ailment. It is usually a chronic condition of the kidneys, an irritation that tears down the cell walls. Dropsy is a condition of the blood fluid in the tissues due to some disease in the body, usually of the heart or of the kidneys. Diabetes is due to an insufficient supply of insulin in the pancreas. These diseases were chronic at the time I examined him. He was in a very

advanced state of Bright's disease when I prescribed for him in the spring of 1932. I treated him for these diseases. At first it seemed to benefit him but after the first of the year he seemed to gradually lose ground again until May. He had constant dropsy and he had a weakened heart and his kidneys were in a very inflamed state. He passed urine in great abundance. He was very nervous and mentally disturbed. By mentally disturbed I mean that he was slow about his speech and seemed slow to think. It was difficult for him to con-centrate on anything. I would tell him to come at certain dates for treatment and maybe he would miss a day or two and I would say, 'Why weren't you on a certain day?' He would say, 'Well, you didn't tell me.' Then I would ask him for a specimen of urine and he would forget that. These diseases I have mentioned would make a person tend to lose weight. I observed that Mr. Stephenson gradually lost weight. The diseases would increase his appetite for water and cause him to crave foods that were not proper to eat, irritating foods. It causes an abnormal appetite for the very foods he shouldn't eat. The foods they eat do not build up the body because of the excessive inflammation that is in the system. I observed a peculiar pigmenta-tion of the skin on the left side of the body. There is a peculiar pallor and color of the skin. The color of the skin indicates a kid-ney infection of some type. The diseases mentioned will produce sores on the body. That is common. The diseases I found in May, 1932, in my opinion, are permanent. They are incurable, in my opinion."

There was expert opinion evidence to the effect that the diseases afflicting insured prior to June 1, 1932, completely and permanently disabled him.

Point is made that the court erred in admitting the testimony of insured and others as to insured's physical condition "after December, 1932." This testimony was as to his physical condition when they examined him. There was no error in the admission of evidence as to such physical condition. According to the contract in suit, the benefits therein provided were payable if the total disability of insured was such as to justify the presumption that it would continue through-out his life. And this evidence as to his condition existing after December, 1932, was for this purpose. Clearly it was admissible as tending to show the probable continuance throughout his life of the alleged disablement.

Appellant also charges that the court erred in permitting Dr. Crank to answer a question concerning the effect the diseases mentioned would have upon plaintiff's ability to perform the duties of a farmer and school teacher, which were the occupations insured had followed. This question was asked after the witness had stated that the several diseases afflicting insured were chronic and incurable, and to facts

showing that insured was physically and mentally incapable of engaging in any occupation. Hence the answer of Dr. Crank to the effect that insured was so weakened that he could not farm or teach school was not reversibly erroneous for the reason that, in the circumstances, the answer did not aid the insured or hurt the appellant.

Dr. Ellis was permitted to answer a question as follows:

"Q. Assuming that a man forty-eight years old, engaged in teaching school and weighing 165 pounds, was under the care of a physician from September 16, 1931, to the latter part of May, 1932, and that during that time, from September 16, 1931, to the first part of 1932, he responded to treatment but from the first part of 1932, to the first week of May, 1932, grew steadily worse and lost fifteen pounds in weight; spent much of his time in bed; called upon his students to assist him in teaching; grew very weak; was sallow in color; suffered pain, and whose condition had progressed steadily worse until during the first week of May, 1932, the Bright's disease from which he was suffering and the dropsy from which he was suffering and the diabetes from which he was suffering had all become chronic, and the Bright's disease and the dropsy disease was constant with him all the time, and his feet and legs were swollen and he walked slowly and unsteadily, sometimes going from side to side the entire width of the sidewalk; was slow of speech and mentally disturbed and suffered with sores and ulcers on his extremities; had a weakened heart; his kidneys were in a very inflamed state and he passed urine, three times as much as a normal man would pass, and at night was compelled to arise every hour to urinate; was very nervous and at times suffered loss of memory; from your experience as a doctor, state whether or not in your opinion his condition in the month of May, 1932, would render him totally and permanently disabled at that time.

Appellant says this question, which was answered "Yes, sir," assumed that there was evidence to the effect that it was necessary for plaintiff to arise at night every hour to urinate. The additional abstract shows that insured testified as follows:

"I had to go to the urinal you might say ever since that time (May 15, 1932) up to the present date, take last night for example, about every hour and a half or two hours. That has been usual since May 20, 1932."

It should not be claimed that the slight variance between the form of the question and the evidence was sufficient to cause a reversal.

The North American Life Insurance Company of Chicago introduced in evidence the original petition filed in the cause, to which appellant objected on the ground that it was hearsay and a self-serving declaration. It must be borne in mind that the appellant caused

its codefendant to be brought into this suit, and that upon being brought in, said codefendant had the right to make a defense. The original petition alleged that insured's disablement had its inception prior to June 1, 1932, the effective date of the contract issued by said North American Life Insurance Company of Chicago. The original petition was properly received in evidence for the reason that it tended to disprove liability on the part of the party offering it.

Appellant contends that its demurrer to the evidence should have been sustained; that any finding that insured was suffering total disability prior to June 1, 1932, was based upon speculation and conjecture; and that the fact that insured taught school until May, 1932, was the best evidence as to whether or not he could work. It is true that insured did not abandon his school, but continued *in a way* to teach, being assisted by advanced students. The evidence, however, abundantly shows that on and for several weeks before June 1, 1932, he was neither mentally or physically able to substantially perform the duties of a school teacher, and that his afflictions were chronic and incurable. There was no evidence tending to show that insured was able to or did engage in any occupation after May 20, 1932. Plainly the question of insured's disablement was one for the jury.

The claim that the court erred in directing verdict in favor of North American Life Insurance Company of Chicago cannot be sustained for the reason that the court did not direct a verdict in favor of said company. The court merely announced his intention to give such direction, but did not in fact do so. Hence the nonsuit was voluntary, notwithstanding the erroneous action of the court in permitting the record to recite it was involuntary.

Insured's instruction No. 4 is assailed upon the ground that it submitted to the jury the question of whether or not the insured was totally and permanently disabled on May 15, 1932, "in the face of his admission that he did work." In the trial, appellant stated "the North American Life Insurance Company, by their pleadings, admit that he (plaintiff) is now permanently and totally disabled, and the issue between American National Insurance Company and the plaintiff is confined solely to whether that disability commenced prior to June 1, 1932." Under the admission, the error, if any, in requiring the jury to find the disablement existed on May 15, 1932, instead of any time prior to June 1, 1932, was to the advantage of appellant. The assignment is disallowed.

The court refused appellant's instruction B, which in substance said that if the defendant North American Life Insurance Company of Chicago, after it was advised that insured claimed to be totally and permanently disabled, continued to receive premiums from in-

sured, it was liable to the insured, and that the verdict must be for the appellant. The instruction was erroneous for the reason that the liability or non-liability of the North American Life Insurance Company of Chicago was not then an issue in the case, and was not a defense available to the appellant.

The appellant's instruction D was refused. This instruction was in legal effect the same as instruction B and was, therefore, properly refused.

Appellant's instruction G-1 said that plaintiff was not suffering "total disablement at the time he carried on his teaching employment on and prior to May 20, 1932." The appellant told the court and jury that the issue between it and the insured was whether or not he suffered total disability prior to June 1, 1932. The instruction sought to narrow the issue thus stated, and was a statement of a mere abstract legal proposition.

During the argument to the jury appellant's counsel said:

"This action that you are trying now is an action wherein this man is seeking to collect a double coverage and so it necessarily follows that he must make a jury believe that before noon on June 1, 1932, was when he was totally and permanently disabled. I say there is no question about him how, as far as we are concerned it is immaterial, and the other company admits that he is now totally and permanently disabled, and so for all the purposes of this argument he is now totally and permanently disabled—and I expect he is. I don't know, but he looks like it. But if you gentlemen can be inveigled into returning a verdict for him in this case—and his idea and hope is to get you to do that—he will be able to collect on a double coverage. You have seen the other policy in suit and you know what it provides. Now, you know, if you know anything, that under that other policy he has got insurance protection that is going to pay him for this total—"

The court sustained an objection to the argument upon the ground thart "the other policy is out of the case." As stated elsewhere in this opinion, the North American Life Insurance Company of Chicago was not a party to the suit at the time the argument was made, and for that reason the argument was not proper.

In its brief appellant says that the judgment is erroneous for the reason that "it does not deny or award any relief to plaintiff, Missouri State Teachers' Association."

Neither the petition nor the evidence discloses that the Missouri State Teachers Association had, or claimed to have. any right or interest in the subject matter of the action. Throughout the trial the parties treated the insured as the sole plaintiff. Insured was regarded by appellant, by the trial court, and by all others concerned,

as the sole plaintiff. In appellant's motion for new trial it is stated that the court erred in overruling the appellant's demurrer "to the amended petition of *plaintiff*;" that the court erred in admitting improper evidence "offered by *plaintiff*;" that the court erred in overruling appellant's demurrer offered at the close of *plaintiff's* (singular possessive) case;" that the court erred in giving on behalf "of the *plaintiff's* instructions which were illegal, improper, and misleading. In appellant's motion in arrest of judgment it is stated that "the judgment should have been for the *plaintiff* and against defendant, North American Life Insurance Company." In appellant's assignments of error insured is referred to as the *plaintiff*. In its argument in the brief, appellant says: "The *plaintiff*, by joining North American Life Insurance Company as a codefendant, placed himself in position to arouse the interest of the jury in his behalf and to get some damaging testimony before the jury, such as would be calculated to make the jury anxious to find a verdict for the *plaintiff* against somebody." Following the quoted language, appellant again refers to insured as the "plaintiff." (All italics mine.) We will treat the matter here as it was treated in the trial court.

The general rule governing the question is stated in 47 C. J. 222, as follows:

"Where the evidence clearly shows that the misjoined plaintiff never had any interest in the suit, the court may after verdict regard the name of the misjoined plaintiff as having been stricken."

The question has been ruled by this court adversely to appellant's contention in the case of Shern v. Sims, 258 S. W. 1029.

The judgment was for the right party and is affirmed. All concur.

CONCURRING OPINION.

SHAIN, P. J.—I concur in the result reached in the opinion herein, but conclude that, to avoid what might otherwise appear as conflict, the case at bar should be distinguished from Kingsland v. Missouri State Life Insurance Co., 66 S. W. (2d) 959.

In the Kingsland case this court held that a cause of action, based on an insurance contract that had been completely terminated, could not be maintained after the complete termination, unless the cause of action existed prior to termination.

The contract in the Kingsland case is vitally different from the contract in the case at bar, in that the Kingsland contract restricts the payment for total disability period of six months and further limits the payment as conditioned to payment from the amount of insurance in force when proof of six months total disability is possible. In other words, the language of the Kingsland contract could not be

construed as extending liability beyond the fixed date of termination of the policy, and, as the policy had expired prior to the contingency of liability as expressed in the contract no cause of action existed.

In the opinion in the Kingsland case, this court was passing upon the contract then before us and there was no intent to assert that an insurance contract by its terms could not extend the liability of the company to contingencies or results that might manifest after the date of expiration. Our opinion in that case does assert that when the contract by its terms restricts the liability of the company to contingencies or results consummating with the period of the life of the policy, that it follows that contingencies happening after the termination cannot be the basis of cause of action.

I have carefully read the contract in the case at bar and conclude that a fair interpretation of the contract presents that there is contemplated liability for and total disability that consummates within the life of the policy and that the liability is not restricted to the termination of the term of the policy. In other words, there is nothing in the contract in issue restricting payment to insurance in force at the termination of the contract.

As there is evidence in the case at bar from which it may be inferred that plaintiff became totally disabled during the term of the contract, and, as I conclude that liability, under the terms of the contract here in issue, attaches when total disability occurs at any time after the date of the contract and within the full period of the contract, and, as I further conclude that under the terms of the contract in issue the six months period of disability is not a prerequisite to liability and is but a limitation as to time for full development' of issue of fact, I therefore concur in the conclusion reached.