Mardella I. JORDAN and William
Jordan, Plaintiffs-Respondents,

v.

GENERAL GROWTH DEVELOPMENT
CORPORATION, Defendant-Appellant.

Mardella I. JORDAN and William
Jordan, Respondents-Appellants,

v.

GENERAL GROWTH DEVELOPMENT
CORPORATION, Sears, Roebuck &
Company, et al., Respondents.

No. WD 34555.

Missouri Court of Appeals,
Western District.

July 10, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1984.

Applications to Transfer Denied
Oct. 9, 1984.

Thomas H. Rost, Jefferson City, for respondents-appellants Jordan.

Tweedie Fisher, Jefferson City, for defendant-appellant General Growth Development Corp.

Thomas Christopher Graham, Jefferson City, for respondent Sears, Roebuck & Co.

Kelly Pool, Jefferson City, for respondent Mo. Builders Ser. of Jefferson City, Inc.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

KENNEDY, Judge.

Mardella Jordan was an employee of Sears, Roebuck & Company at its retail store in Jefferson City, Missouri. On July 10, 1978, she slipped on a wet spot on the floor and fell, sustaining serious injuries. The wet spot on the floor was caused by a leak in the roof. The leak was traced to an eyebolt to which was attached one of the three guy wires which supported a TV antenna on the roof of the building. The eyebolt ran through a hole in the metal deck of the roof, through a metal plate on the underside of the deck, with a nut on the lower (threaded) end. The upper, the eye end of the bolt extended above the deck through a "pitch pan". The "pitch pan" was a six-inch square bed enclosed on its four sides by a metal border, extending two inches above the level of the surrounding roof. This pan was filled with asphalt. The theory was that when the eyebolt moved, the soft asphalt would settle around the bolt and seal up any leak. The fault in the arrangement in this case, according to plaintiff's expert witness, was that the bolt was not firmly attached both above and below the roof deck in order to prevent or minimize its lateral movement. With only the plate and nut below the deck, the guy wire when attached would be pulled toward the antenna and leave a greater void on the opposing side of the bolt than it would if the bolt were rigid. If the guy wire was attached during cold weather the mastic would not fill in the void.

Defendant General Growth Development Corporation was the general contractor which had built the building. The record does not tell us when the construction was completed, but the roof was being applied during March, 1977, fifteen months before Mrs. Jordan's injury. The corporation had nothing to do with the erection of the antenna. There was no evidence about who erected the antenna or when.

A Sears maintenance man had discovered the leak 30 minutes before the time of Mrs. Jordan's fall, and had mopped it up three

or four times. He acknowledged in his testimony that he should have barricaded the spot and it was his negligence that this was not done.

Mardella and her husband, William, brought suit for damages against a number of defendants including General Growth Development Corporation, the building contractor, but the case was finally submitted only against the latter.

Mardella had a verdict for $170,000 actual damages and $300,000 punitive damages. Her husband received a verdict for $10,000 damages.

From the ensuing judgments General Growth Development Corporation has appealed to this court.

We affirm the judgments, both Mardella's and William's, for actual damages in accordance with the verdict, but we reverse Mardella's judgment for punitive damages.

**I**

Appellant does not challenge the sufficiency of the evidence to prove prima facie that the eyebolt and pitch pan were incorrectly installed, so that a leak was likely to develop. It does, however, challenge the submissibility of the case in that the negligence of the defendant, as it contends, was not the *proximate cause* of the plaintiff's injuries. Specifically, it claims that Sears' negligence was an *intervening cause.*

Since appellant's argument is thus narrowly targeted, we are not called upon to discuss the whole subject of proximate cause as it relates to our factual situation, but may confine our discussion to the intervening cause argument. Was the negligent (as we shall assume it was negligent) failure of Sears to barricade, to mop up or to warn of the hazardous wet spot an intervening cause, which cut off the flow of causation from defendant's negligence in its construction of the pitch pan-eyebolt arrangement to plaintiff's injury? We hold it was not.

The legal principle which appellant calls upon, and urges upon us as decisive of this case, is thus stated in *Duke v. Missouri*

*Pacific Railroad Company,* 303 S.W.2d 613 (Mo.1957), quoting from 65 C.J.S. Negligence § 111(b), notes 44, 45, p. 692:

"Where a second actor has or should have become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause."

303 S.W.2d at 617.

The key word in the above quotation from *Duke* and C.J.S. is "independent" as modifier of "act of negligence". In the next paragraph of the opinion in *Duke,* continuing to quote from C.J.S. the idea is amplified as "distinct, successive, unrelated".

In order for a third person's negligence to be an intervening cause insulating the original tort-feasor from liability for his negligence, the intervening negligent act or negligent omission must be of a wholly "independent", "distinct", "successive", "unrelated" (to use the words quoted above) character. It may not be one which is itself a foreseeable and natural product of the original negligence. In the case before us, the jury could have found, as it did, that failure of Sears to take precautionary measures to protect against injury from the leak was within the range of natural consequences of the defendant's negligence and that it flowed from that negligence. An illustrative case is *Gathright v. Pendegraft,* 433 S.W.2d 299, 308 (Mo.1968), cited to us by plaintiff. In that case, plaintiff's decedent was killed by an explosion of a gas furnace in a newly constructed house. Suit was brought against the plumbing contractor. The plumbing contractor had failed to cap an unconnected gas pipe. Some unknown person attempted to connect the gas pipe to the range, and did so negligently. The contractor claimed that the negligence of the person who undertook to make the connection was the intervening cause, and that his original negligence was therefore not the proximate

cause of the injury. In rejecting this claim, the court said:

> We cannot say as a matter of law that a negligent tampering with the pipe, or a negligent attempt by some third person to do an act which was the duty of Mr. Vaughn [the contractor] to perform and which he negligently did not perform, was the efficient intervening cause and not an act of concurring negligence. Defendant Vaughn was not entitled to a directed verdict on the basis of intervening cause.

433 S.W.2d at 308.

We likewise cannot say as a matter of law that Sears' negligence was an intervening cause so as to sever the causation between defendant's negligence and plaintiff's injury.

## II

■ Defendant complains of plaintiffs' verdict-directing instruction. The instruction is not in MAI. Defendant's specific criticism of the instruction is that the jury was required to find that the defendant "knew, or should have known that the said unsafe condition was thereby created", without giving them a standard (i.e., "in the exercise of ordinary care") by which it could determine whether defendant "should have known" that its eyebolt pitch pan installation created an unsafe condition.

The instruction did, however, require the jury to find that defendant's hypothesized conduct was negligent, and there was an instruction which defined negligence. MAI No. 11.02. This was sufficient, and defendant's point is denied.

## III

■ Defendant complains of a comment interjected by Mr. Rost, plaintiffs' attorney, during the closing argument of Development Corporation's attorney, Mr. Fisher. The following exchange occurred near the beginning of Mr. Fisher's closing jury argument:

> First of all, as you have heard, Sears, Roebuck, which is not being sued in this case, had failed to barricade the water on the floor.
>
> Mr. Rost (for plaintiff): Your Honor, I think that is incorrect. There is a claim by Tweedie Fisher's client against Sears, Roebuck in this case.
>
> Mr. Fisher: If your Honor please, that is not proper argument for this jury, and I ask the Court to instruct the jury—
>
> The Court: He's not arguing the case, you are, Mr. Fisher. Go ahead with your argument, sir.

Undoubtedly the comment by plaintiff's attorney was improper. *Doster v. Chicago, Milwaukee & St. Paul Railway Company*, 158 S.W. 440 (Mo.App.1913); *City of Advance v. Maryland Casualty Company*, 302 S.W.2d 28, 34 (Mo.1957); *Stephenson v. American National Insurance Company*, 229 Mo.App. 480, 78 S.W.2d 876, 884, 885 (1935).

There are two reasons which in combination if not separately cause us to hold the incident not to be reversible error.

The first reason is that we are not satisfied that the defendant was prejudiced. If the jury understood from Mr. Rost's remark that defendant would, could or might recover over from Sears all or part of any award to plaintiffs, the remark very well could have been prejudicial, especially since no such claim was pending, and since any such claim would have been unavailing. *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979). But we can scarcely think the jury would have put such a construction upon it. There actually had been a third party claim against Sears in the case. The third party claim was based upon an indemnity provision in a lease from Growth Properties (another defendant, the owner of the building, which had been in the case till the instruction phase). Plaintiff had not submitted against Growth Properties. Sears had been identified during voir dire as a third party defendant and had been represented by an attorney throughout the trial, although its attorney

did not participate in the examination of any of the witnesses. We think the jury was likely quite vague in its understanding of Sears' place in the lawsuit, and Mr. Rost's comment added neither to the confusion or the clarifications.

The second problem is the problem of preservation. The less likely we deem the alleged error to have subverted the outcome of the trial, the more exacting we are in our requirements for preservation. The objection is insufficient in that it does not give any reason. *Gilmore v. Union Construction Company*, 439 S.W.2d 763, 767 (Mo.1969); *State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W.2d 712, 724–25 (Mo.App.1978). While it might be argued that the reason for the objection was obvious and no amplification should have been required, *see Kelly v. Hudson*, 407 S.W.2d 553, 558 (Mo.App. 1966), still we cannot say, in the context of this case, that the ground for this objection was that apparent. Add to that fact the ambiguity of the trial court's response to the objection. The trial court was not pressed for a definite ruling on the objection. *See Federal Deposit Insurance Corporation v. Crismon*, 513 S.W.2d 305, 307 (Mo.1974).

Defendant's point is denied.

## IV

Defendant complains of the punitive damages instruction, and complains of the *excessiveness* of the punitive damages award. Although it did so in its motion for a new trial, it does not here challenge the *submissibility* of the punitive damages issue. We have sua sponte examined the submissibility of punitive damages, however, and we have determined that there was no evidence in the case justifying the submission of that issue.

 The question of submissibility is inherent in every case. *Chaney v. Creten*, 658 S.W.2d 891, 893 (Mo.App.1983). *See also Renshaw v. Reynolds*, 317 Mo. 484, 297 S.W. 374, 378 (1927); *Thomas v. Aines Farm Dairy*, 257 S.W.2d 228, 236 (Mo.App. 1953); *Rolla Produce Co. v. American*

*Railway Express Co.*, 205 Mo.App. 646, 226 S.W. 582, 583 (1920). The principle is usually applied with reference to a prima facie case of liability, but it applies equally to the submissibility of the issue of punitive damages. If we look for sanction for our considering sua sponte the submissibility of punitive damages, we find it in the plain error rule, Rule 84.13(c), which allows us in our discretion to consider plain (i.e., clear, obvious, instantly recognizable) error affecting substantial rights, when manifest injustice or miscarriage of justice has resulted therefrom. The submission of punitive damages in this case is just such an error as that.

The MAI instruction which was used in this case to submit the punitive damages issue was MAI 10.02. It required the jury to find that the negligent conduct of the defendant was "in conscious disregard or complete indifference to the safety of others". In *Stenson v. LaClede Gas Company*, 553 S.W.2d 309 (Mo.App.1977), the court wrote:

The law with respect to punitive damages is that in order to justify the infliction of punitory damages for the commission of a tort, the act complained of must have been done wantonly or maliciously. It is where the act which might properly be characterized as negligence also manifests such reckless indifference to the rights of others that the law will imply that the injury resulting from it was intentionally inflicted; or, where there is conscious negligence tantamount to intentional wrongdoing, where the person doing the act or failing to act must be conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. banc 1973).

553 S.W.2d at 315.

Restatement of Torts, Sec. 500 (1935), adopted by *Nichols v. Bresnahan*, 357 Mo.

1126, 212 S.W.2d 570 (1948), reads as follows:

> The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result to him.

There was no evidence in this case that brought the defendant's negligence within these definitions. Plaintiff in her brief (addressing the question of the excessiveness of the punitive damages award) points to the following features which she claims put the defendant's negligence in the punitive damages category: The superintendent of the subcontractor which installed the roof had expressed the opinion to representatives of defendant Development Corporation "that the eyebolts would move because they were attached to the flimsy metal deck. He had no objection to the pitch pans if the eyebolts were rigidly anchored and would not move," and that the eyebolts could not be waterproofed. A letter from a sales representative of the manufacturer of the roofing material, who visited the site during the application of the roof, agreed that "some other method of turning the water away from this penetration should be found." This advice was contained in a letter directed to defendant's project manager dated March 11, 1977, and was a memorandum of a visit made to the site on March 10. The contents of the letter were discussed by defendant's project manager, Mr. Whitcomb, with defendant's project superintendent. Furthermore, plaintiff's expert witness testified that installation of the pitch pan "simply did not constitute good workmanship in the industry".

The evidence recited above shows no "conscious disregard or complete indifference to the safety of others". Even though the roof might leak, it was not the sort of thing that posed an immediate danger to the safety of others. Even if the eyebolt was moved during the cold weather so that the mastic would not settle down around the bolt and seal up the leak; even if the person moving the eyebolt and attaching the guy wire did not fill in the void left by the movement of the bolt, still the leak was only a small drip which really posed no danger to anybody's safety except in the unlikely combination of circumstances that coincided in this case to produce Mrs. Jordan's injury. This is very likely enough for a submissible case of proximate causation, for in determining whether a plaintiff's injury was proximately caused by defendant's negligence, one traces the concatenation of events from the injury backward to the alleged act of negligence. The test is simply whether, *after the occurrence,* the injury appears to be the reasonable and probable consequence of the act or omission. *Floyd v. St. Louis Public Service Company,* 365 Mo. 247, 280 S.W.2d 74, 78 (1955); *Smith v. Secrist,* 590 S.W.2d 386 (Mo.App.1979). But for that same act of negligence to be in conscious disregard or in complete indifference to the safety of others requires that the danger of injury be more imminent. Compare *Reel v. Consolidated Investment Company,* 328 Mo. 433, 236 S.W. 43 (1921) where the plaintiff was one of two passengers in an elevator which fell as a result of worn and broken cables. In upholding the submission of punitive damages, the court said:

> One permissible view of the evidence is that at the time of the inspection on March 4th and subsequently the cables of the elevator were so worn and broken that they were likely to give way at any instant while in use; that Reed [defendant's engineer] not only knew the physical condition of the cables, but he also knew and appreciated the imminent danger necessarily incident to their further use; and that his failure to renew them during the period of six weeks was not, and under the circumstances could not have been, the result of mere inadvertence, but of an utter indifference to the rights of those whose lives and limbs were thereby daily and hourly imperiled,

equivalent to intentional wrongdoing. Both the pleading and the evidence were sufficient to authorize an award of exemplary damages.

236 S.W. at·46.

*Reel* is a contrast to the case before us.

The punitive damages award is therefore set aside, and the judgment for punitive damages is reversed. The case is remanded to the trial court for the entry of a new judgment for the amount of the actual damages in favor of plaintiff Mardella Jordan.

The judgment for William Jordan is affirmed in all respects.

All concur.