SAM CHARLES STEPHENSON, RESPONDENT, v. NORTH AMERICAN LIFE INSURANCE COMPANY, APPELLANT.—94 S. W. (2d) 937.

Kansas City Court of Appeals. May 4, 1936.

*John Campbell* and *Rieger & Rieger* for respondent.

*Thomas E. Rooney, Murrell & Murrell* and *Mahan, Mahan & Fuller* for appellant.

BLAND, J.—This is an action upon a disability provision of a life insurance policy. The case was tried before the court, without the aid of a jury, resulting in a judgment in favor of the plaintiff in the sum of $2185.68. Defendant has appealed.

In order to obtain an intelligent understanding of the facts, it is necessary to allude to other policies of insurance and to litigation between the parties hereto growing out of them wherein plaintiff was also a party plaintiff and in which another insurance company, American National Insurance Company, of Galveston, Texas, was a party defendant.

The facts show that on the first day of June, 1927, the American National Insurance Company, of Galveston, Texas, issued to the Missouri State Teachers Association its master policy, effective from noon June 1, 1927, to noon June 1, 1932, and that plaintiff was thereafter an individual certificate or policy holder under said master policy of insurance. This individual policy was for life insurance in the sum of $5000, with the total sum payable to insured should he become totally and permanently disabled during the life of the policy.

The master policy and the individual policies issued thereunder, being about to expire, the Missouri State Teachers Association, on April 21, 1932, applied to the defendant for a master policy to run for a period of five years from its effective date, which was to be June 1, 1932. The policy was issued on the same day that the application therefor was made. There is no mention in the application for the policy, or in the individual policy issued to plaintiff under it, of the existence of the policies issued by the American National Insurance Company, but it will be noted, from an examination of the dates on the policies, that the new policies were to become effective upon the expiration of the old ones.

The master policies and the individual certificates issued, respectively, by the companies were practically the same, except as to the time covered and, also, that the individual policy issued by the American National Insurance Company stipulated that the amount thereof ($5000) would be paid in one lump sum, while, the one issued by the

defendant provided that the $5000 would be paid in installments, at the election of the plaintiff.

The agreed statement of facts in the case at bar recites:

"That on or about the 15th to the 20th day of May, 1932, and prior to the first day of June, 1932, the said Sam Charles Stephenson became, and still remains, totally and permanently disabled, within the meaning of that term as used in the policy herein sued upon."

The facts further show that on or about April 15, 1933, the other suit, heretofore alluded to, was filed by plaintiff against the American National Insurance Company, in which the sum of $5000 was prayed and in which it was alleged that he became totally and permanently disabled on May 15, 1932. On November 3, 1933, the defendant, in that case, answered, asking the court to cause the defendant in the case at bar, that is, the North American Life Insurance Company, of Chicago, to be made a party defendant. In compliance with that request, the court made the present defendant a party defendant in that cause. An amended petition was thereafter filed, in which the present plaintiff and the Missouri State Teachers Association were named as plaintiffs and the two insurance companies as defendants.

In that part of the amended petition alleging a cause of action against the American National Insurance Company, plaintiff stated that he became totally and permanently disabled on May 15, 1932 and, in that part of the petition stating a cause of action against the present defendant, or the North American Life Insurance Company, he stated that he became totally and permanently disabled on June 1, 1932. In his prayer he asked judgment "against defendants for the sum of $5000 in a single sum of that amount."

At the close of all of the testimony the court announced that it intended to give an instruction in the nature of a demurrer to the evidence offered by the defendant, North American Life Insurance Company, whereupon plaintiff took a nonsuit as to that defendant. There is nothing to indicate why the court indicated that it would sustain a demurrer, but it appears that it was developed in that suit that plaintiff had become totally and permanently disabled in the month of May, or prior to the time the policies that were issued by the present defendant became effective. The case was submitted to the jury as against the American National Insurance Company, alone, resulting in a verdict in favor of the plaintiff in the sum of $5000. Defendant appealed to this court where the judgment was affirmed. [See Stephenson v. Am. Nat. Ins. Co., 78 S. W. (2d) 876.] In the opinion in that case we said, l. c. 880:

"As will be readily apprehended, the *main* contention, as between the two defendant insurance companies themselves, was to when the alleged total disablement of insured Stephenson *began* or *occurred*. If it was after June 1, 1932, the question of whether the insurance

sued for should be paid or not was a matter which concerned the first-named company, for its insurance had expired on that date. But if the alleged disablement took place *before* June 1, 1932, then the second-named defendant, the North American Life Insurance Company of Chicago, could not be held liable in any event, because the disablement sued for arose *before* its insurance had become effective."

What we said in that case, of course, is in no wise binding upon the defendant in the case at bar, for the reason that it was not a party to the cause at the time it reached this court. We are merely stating what happened in this court in that case as a matter of history.

In the application for the master policy issued by the defendant herein, which application, as before stated, was dated April 21, 1932, appears an eligibility clause, reading as follows:

"ELIGIBILITY: This insurance shall be available only to persons who at the time of the application therefor are members of the Association. All such persons shall be eligible to insurance under this plan subject to evidence of insurability satisfactory to the Company, except that any member of the Association now insured under a similar plan under a master policy carried by the Association with another company shall be eligible to insurance under this plan in an amount equal to or, at the option of the member, less than the amount now carried under said plan, without evidence of insurability, provided the first annual premium for such insurance as provided herein is paid during the life of such member on or before the effective date of the contract hereby applied for or within thirty-one days thereafter, and provided such member is not totally and permanently disabled as of the date of the contract."

As before stated, the master policy was issued on the same day. The master policy provides that it "shall be effective from the first day of June, 1932, for a term of five years." It also provides:

"The premium for members insured at the effective date of this policy, in accordance with the schedule of initial insurance, shall be computed upon the basis of the schedule of rates hereinafter contained for the respective ages of the insured members. . . . The premium charge for insurance of any member who shall after the effective date of this policy, or of any renewal thereof, become eligible to insurance or to an increase in the amount of insurance during any insurance month shall be computed from the first day of the following insurance month."

It also provides that all premiums should be paid annually in advance by the individual member to the master policy holder who should remit it to the company; that payment to the master policy holder should be considered payment to the company "for the purpose of determining when the insurance under any individual certificate shall go into effect or remain in force." It further provides that a grace

period of thirty-one days would be granted for the payment of any premium after the first, under individual certificates and, that if any premium, after the first, was not paid on or before the anniversary of the effective date of the individual certificate, or within the grace period, the insurance under such certificate should thereupon lapse, except.as otherwise provided in the provision entitled "Permanent Total Disability Benefit."

The policy further provides:

"This policy, the application of the Master Policyholder and the individual applications, if any, of the members insured shall constitute the entire contract between the parties. . . . In case of disagreement between the terms of this policy and of the application of the Master policyholder therefor, the terms of said application shall prevail."

The individual policy issued to plaintiff insured his life in the sum of $5000 payable, in the event of his death, to his wife. It was dated June 1, 1932, but it "probably was not issued for sometime after that." It further provides that if the insured, before attaining the age of sixty (he was forty-nine when the policy was issued) should become totally and permanently disabled, etc., the company, subject to certain limitations and conditions, would waive further payment of premiums as to the member and would pay in full settlement of its obligation to the policyholder, the amount of insurance in force upon his life, giving him the option to receive $1075 per year in five installments, instead of the lump sum of $5000. The individual policy contained the same provision as contained in the master policy in reference to the payment of premiums. No application for the individual policy appears in the record.

The application for the master policy provides that individual certificates should be issued to each member of the association insured under the master policy; that the rate of premium therein provided for should continue "in effect for a period of five years from June 1, 1932. The application further provides:

"EFFECTIVE DATE: The insurance hereby applied for shall be effective June 1st, 1932, provided this application shall have been accepted by the Company.

"The individual certificates issued to members named in the schedule of initial insurance shall be dated and the insurance thereunder shall become effective June 1st, 1932. All certificates issued thereafter shall be dated and the insurance thereunder shall become effective as of the first day of the month following that in which application therefor is filed with the Association, provided the premium thereon has been paid to the Company or to the Association, and the application has been approved by the Company."

It also provides: "In case of disagreement between the terms of this application and of the master policy, the terms of this application shall prevail."

On May 31, 1932, plaintiff paid to the Missouri State Teachers Association the sum of $62.90, being the first annual premium upon his certificate of insurance. No other premiums were paid, except on each of the following dates, June 29, September 18 and December 29, 1933, plaintiff paid to the Missouri State Teachers Association, the sum of $17.60. These were quarterly installment premiums. It appears that defendant accepted premiums on that basis. The first premium actually reached the hands of the defendant but the three subsequent quarterly premiums were retained by the Missouri State Teachers Association, apparently, for they did not come into the possession of the defendant.

It may be that, under the terms of the policy, payment to the Missouri State Teachers Association was payment to the defendant. Plaintiff so contends but, as hereinafter indicated, that matter is immaterial.

As before stated, the suit against the American National Life Insurance Company was instituted in April, 1933. On May 25th of that year plaintiff wrote the Missouri State Teachers Association reminding it of the pendency of the suit and stated: "If I do not pay premium by June 1 that means my insurance ceases until premium is paid and it must be paid in July or it will lapse. If the premium is paid June 1 and I win the suit will the amount of premium be returned?" In answer to this letter, and on May 26, 1933, the teachers association wrote plaintiff that it might be that the "insurance company" might waive the payment of the premium due for the month of June, 1933, until the suit was decided, and that it would write "today and make inquiry on that point."

On May 26, 1933, the teachers association wrote the North American Life Insurance Company, the present defendant, stating that a suit was pending to recover for total and permanent disability sustained by plaintiff prior to June 1, 1932, and asking it if it would waive payment of the premium pending the outcome of that suit, or should the writer of the letter demand from plaintiff the premium due on the certificate held in the present defendant company, The North American Life Insurance Company. On June 19, 1933, the present defendant wrote the Missouri State Teachers Association as follows:

"Replying to your letter of May 26th, I would suggest that if payment is tendered as premium on this policy you accept the money but withhold the usual receipt and send them instead a letter acknowledging the remittance with advice to the effect that the remittance has not been applied in payment of the premium, but will be held

subject to their order pending the outcome of the suit under the American National Certificate.''

On June 21, 1933, the teachers association wrote plaintiff referring to the correspondence that it had theretofore had with him relative to the payment of his premiums and enclosing the letter that it had received from the present defendant. On June 30, 1933, the teachers association wrote plaintiff's attorney a letter acknowledging that he had sent them a check for the quarterly premium and stating: ''We are not sending receipts at this time, but are handling the matter in accordance with our letter of June 21, to Mr. Stephenson.'' On August 15, 1933, the teachers association wrote plaintiff's attorney as follows:

''You will note from the enclosed premium notice, another quarterly payment on Mr. Stephenson's premium will be due on September 1, but you will have until October 1 to make payment. The case may, of course, be settled before that time, but if it is not the premium payment should be tendered.''

On June 1, September 1 and December 1, 1933, defendant sent plaintiff notices that the quarterly premium falling due on those dates was payable. It had theretofore, and prior to June 1, 1932, sent him a notice that the first annual premium must be paid by that date. Each of the three notices concerning the due date of the quarterly premium stated: ''Failure to make payment within thirty-one days following the date when the premium is due will cause the insurance to lapse.'' As indicated supra plaintiff made payment of these quarterly premiums to the Missouri State Teachers Association.

As before stated, the present defendant was made a party defendant on November 3, 1933, in the former case brought against the American National Insurance Company. Thereafter, the present defendant was duly served in that case and filed its answer and, on January 23, 1934, it paid into court, for the plaintiff, the sum of $68.05, being the amount of the first premium received from the plaintiff, together with interest. It seems to have been the contention of this defendant that it was only required to tender back the premiums actually received by it and not those received by the teachers association and not remitted to it. At any rate, on February 8, 1934, the teachers association tendered into court, in that suit, the premiums that had been received by it, together with interest.

The judgment against the American National Insurance Company was affirmed by this court on January 1, 1935, and the motion for a rehearing was denied on January 28th of that year. On March 29th of the same year the clerk of the lower court wrote the attorney for the present defendant stating that she was anxious to ''check (the sum of $68.05 deposited by the present defendant) out of our account'' and asking that she be advised as to whom the money should be paid. Defendant's attorneys, after advising with it, wrote the

clerk to remit the money to them and to make the check payable to the defendant. The clerk carried out these instructions and the money was returned to the defendant. This suit was instituted in the month of April, 1935. The evidence shows that the clerk remitted the sum of $68.05 to the attorneys of the present defendant after the present suit was instituted against it and that it retained the money until the opening of the trial in the present case when the defendant tendered into court, for plaintiff's use, the amount of the premium, together with interest that it had collected and had actually reached its hands. Before the trial, the Missouri State Teachers Association was permitted, over the objection of plaintiff, to interplead for the purpose of tendering back to plaintiff the amount together with interest, that it had received from him that had not been turned over to the defendant. It then paid this money into court for the use of plaintiff.

It is insisted by the defendant that the court erred in refusing to give its instruction in the nature of a demurrer to the evidence. In this connection it is pointed out that the insurance involved in this case did not become effective until the first day of June, 1932, and as plaintiff became totally and permanently disabled on or about May 15th or 20th of that year, the insurance was not in force at the time he became disabled and, therefore, did not cover such disablement.

In reference to this point we may accept the contention of the plaintiff that the eligibility clause in the application for the master policy fixed the eligibility of the members of the teachers association for insurance with the defendant as of that date. As plaintiff was then insured under the master policy issued by the American National Insurance Company, or "under a similar plan, under a master policy carried by the association with another company" as mentioned in the application for the master policy in the case at bar, and was not totally and permanently disabled on that date, that is, April 21, 1932, undoubtedly he was eligible to insurance under the master policy without evidence of insurability. His premium was paid before the effective date "of the contract hereby applied for" (the words used in the application) or, in other words, before the effective date of the master policy and he complied with all of the conditions for the issuance of the individual certificate received by him.

However, we do not think that the fact that insured was not disabled at that time (April 21, 1932) determines the question now before us. At the time the insurance went into effect, which was on June 1, 1932, plaintiff had already become totally and permanently disabled and that event could not have been insured against as of that date. [Mitchell v. Am. Mut. Ass'n, 46 S. W. (2d) 231; State ex rel. v. Shain, 334 Mo. 385, 393; State ex rel. v. Allen, 85 S. W. (2d) 886.] It would be no more possible to insure, as of that date, a person

against total and permanent disability that had already come about and from which he was then suffering than it would be to insure a dead person or a house against fire that had already been burned. Apparently the provision in the eligibility clause of the application providing that members of the teachers association who were not, on April 21, 1932, totally and permanently disabled were eligible for insurance without evidence of insurability had reference to the life insurance provision of the policy. Defendant, in order to obtain the business, was willing to insure the lives of such members who were not then totally and permanently disabled, without evidence of insurability.

However, plaintiff insists that defendant by retaining the premiums for so long a time, with knowledge of the disability, waived the matter and is estopped to deny that the policy covered the disability.

There is nothing definite in the record indicating when defendant acquired knowledge that plaintiff had suffered the disability but plaintiff does not claim that it knew of the same prior to December 9, 1932. It seems to be substantially admitted that defendant did not know of it on June 1, 1932, or, at the time the policy went into effect.

Without reviewing the facts as we have stated them in reference to the collection and retention of premiums on the part of the defendant and its agent, if it was its agent, the Missouri State Teachers Association, and without going into the question of what bearing such conduct by it would otherwise have on the question of waiver and estoppel, it is only necessary to say that waiver and estoppel cannot be relied upon by plaintiff in this case, as the acts of the defendant and its agent, if it was, the Missouri State Teachers Association, even though they might constitute waiver and estoppel in an ordinary case, cannot be relied upon as such in this case, for the reason that insurance cannot be effected by such means upon a past event, or one not in existence, at the time it goes into force. [See cases last cited.]

We do not construe either plaintiff's petition or his brief as claiming that his insurance became effective on April 21, 1932, or at any time prior to his becoming permanently and totally disabled. However, in any event such contention would be without merit as, from the plain words of the application, the group policy and the individual certificate of insurance did not become effective until June 1, 1932, and no premium was tendered, paid, requested or accepted for any insurance effective prior to that date.

However, plaintiff claims that defendant's assignment of error is not sufficiently specific to warrant consideration by this court of the point made. There is but one assignment of error. It reads as follows:

"The trial court committed error in refusing to give appellant's (defendant's) demurrer to the evidence offered and requested at the close of the entire case."

We understand, from an assignment of this kind, that it is the claim of the appellant that there was no evidence to take the plaintiff to the jury or that the whole record discloses that plaintiff is not entitled to recover. While this assignment is nowhere developed except under the heading "Argument" we find that it is fully and clearly set forth thereunder. The reasons why defendant claims that its demurrer to the evidence should have been sustained are there fully and understandingly set forth and in view of that fact and the further circumstance that there is a very clear and satisfactory statement made in its brief, we are loath to refuse to consider the assignment of error. But one assignment of error is made and we have experienced no difficulty in understanding the point raised. An assignment relating to the demurrer to the evidence is usually negative in its nature, that is, its effect ordinarily is to urge the absence of evidence of any kind in the record to support a recovery. An assignment of this kind is somewhat different from an ordinary assignment of error for the reason that a point that the demurrer to the evidence should have been sustained is aimed at the whole record, whereas, other assignments are usually directed to only a part of the record. Therefore, a general assignment of this character ought to be enough in an ordinary case. We have recently held that a general assignment of this nature is sufficient. [See Schell v. Ransom Coal & Grain Co., 79 S. W. (2d) 543; Round Prairie Bank of Fillmore v. Downey, 64 S. W. (2d) 701; Cavanaugh v. Dyer, 215 S. W. (2d) 481.]

The judgment is reversed. All concur.