[No. 9616. In Bank. — February 19, 1886.]

J. H. HARLAN ET AL., APPELLANTS, v. BENJAMIN ELY, RESPONDENT.

SALE OF WHEAT — PAYMENT BY TIME CHECK — CUSTOM OF MERCHANTS — NEGLIGENCE. — The action was brought on a promissory note executed in favor of the plaintiffs by the defendant and one Scoggins, and was secured by a chattel mortgage upon a crop of wheat belonging to the latter. After the wheat was harvested, Scoggins delivered it to the plaintiffs to be sold, according to the usual custom of merchants, and the proceeds applied to the payment of the note. The plaintiffs sold the wheat, and without the consent of Scoggins or the defendant, received in payment therefor a check payable ten days after sight. The usual custom of' merchants engaged in the wheat trade at the place of sale was to sell for

cash or sight drafts.  Before the maturity of the check, the purchaser of the wheat failed, whereby the purchase price was lost.  *Held*, that the plaintiffs were liable for the loss, as it was occasioned through their negligence in accepting a time check in violation of the usual custom of merchants.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. H. McKune*, for Appellants.

*J. C. Ball*, and *J. W. Armstrong*, for Respondent.

SEARLS, C.—This is an action upon a promissory note dated October 31, 1877, made by defendant and one D. F. Scoggins, for three thousand dollars and interest, payable one day after date to plaintiffs or their order.

The cause was here on a former appeal from a judgment in favor of plaintiffs, and the decision reversing the judgment and remanding the cause for a new trial is reported in 55 Cal. 340.

Since that appeal the cause has been again tried before a jury, and a general verdict rendered in favor of defendant.

In addition to the general verdict, the jury were instructed to find upon a large number of questions submitted to them, all of which were answered, and from which it appears that D. F. Scoggins (who by the pleadings and evidence is shown to have been a joint and several maker with defendant of the promissory note upon which this action is brought, and who executed the chattel mortgages to plaintiffs upon the growing crop, to secure, among other things, the said promissory note as specified in the answer), in the summer of 1878, delivered in the name of plaintiffs, at the warehouse in Madison, a lot of wheat of the value of six thousand dollars; that such wheat was delivered under the mortgages of plaintiffs, held as security for the payment of the promissory note in controversy in this cause.

That plaintiffs sold the wheat to one Mansfield; that plaintiffs took possession of the wheat under the mortgage to pay the note in suit; that in delivering the wheat to Mansfield the plaintiffs acted as a prudent man would have done in his own important business, and that they were not guilty of any negligence in making a sale of the wheat to Mansfield; that they did not sell or agree to sell the wheat on credit, but that such sale having been made, they knowingly and voluntarily accepted a check at ten days after sight; that they had not previously agreed to do so, but that having received the time check they consented to retain it, which was in contravention of the usages of trade in selling wheat, the practice being to sell for cash or sight drafts; that plaintiffs were guilty of a want of ordinary prudence in connection with the check received by them for the wheat; that neither defendant nor Scoggins consented to a sale of the wheat on credit, or to taking a time check in payment therefor.

That Scoggins consented to and concurred in the sale of the wheat by plaintiffs to Mansfield, but did not authorize or consent to a credit sale of the wheat, or to taking a time check therefor.

There are other facts found from which it appears the sum of three thousand dollars was loaned by plaintiffs to Scoggins, who to secure the payment thereof gave them the joint and several note of himself and defendant Ely, and as additional security, a chattel mortgage on his growing crop; that defendant received no part of the money, and was, as between himself and Scoggins, but a surety for the latter, though in form a joint and several maker of the note, and for aught that appears was liable as such to plaintiffs.

The case seems to have turned upon the question whether or not plaintiffs, after receiving the wheat, the proceeds of the growing crop covered by the chattel mortgage, and selling the same to Mansfield by consent of the mortgagor, were guilty of such negligence as rendered them liable.

The practice of merchants in the vicinity was to sell for cash only, or to receive sight drafts in payment. They contracted, so far as appears, to sell for cash, but, without consent of the mortgagor or defendant, accepted a time check in payment, which, according to the evidence, was not paid, by reason of the failure in business of the drawer.

Had the money been received on this check, it would have satisfied the note in full.

Under these circumstances, the jury found a general verdict for defendant, in addition to the special findings.

The apparent relation of defendant Ely to plaintiffs was that of a principal debtor. He was a joint and several maker with Scoggins of a promissory note to plaintiffs for three thousand dollars, and the testimony was ample to show that the actual relation of defendant to plaintiffs was, in fact, what his apparent relation indicated, and the jury has so found the fact. .

This being true, we do not see that he is subject or entitled to other or different consideration than Scoggins, who was a joint and several maker with him of the note.

Plaintiffs held a chattel mortgage to secure the payment of the note, upon the growing crop of wheat owned by Scoggins. Plaintiffs also found it necessary to advance funds for Scoggins to defray the expense of harvesting the wheat to secure which they took a second chattel mortgage covering not only this last indebtedness, but also the amount due on the note now in suit.

Upon being harvested, the wheat was delivered by Scoggins at a warehouse in Madison, in the name of and subject to the order of plaintiffs, and was by them sold to one Mansfield.

Scoggins had previously contracted the wheat to Mansfield, but having had some misunderstanding with him, objected, as he claims, to having it delivered to him. There was a conflict in the evidence as to whether Scoggins consented to the sale by plaintiffs to Mansfield, and the finding of the jury is that he *did not* consent.

In our view of the case, his concurrence or non-concurrence as to the person to whom the sale was made was of no importance.

It was made in the ordinary course of business, so far as appears; the price obtained was not disproportionate to the market price; and the jury finds that in delivering the wheat to Mansfield, plaintiffs acted in a prudent manner.

The whole contention between plaintiffs and defendant is concentrated upon a given point. The former sold the wheat to Mansfield without receiving payment therefor, received a check in payment, payable ten days after date, and before the maturity of the check Mansfield failed, whereby the purchase price of the grain was lost.

It does not appear that the contract of plaintiffs was for a sale on credit, but that upon a sale fairly conducted and in which they were entitled to immediate payment, they delivered the wheat without receiving compensation; and when the time check was forwarded to them, did not, so far as appears, object thereto, or take steps to secure payment until too late.

The jury in their special findings absolve them from all negligence in making the sale, but find that the usual custom of business men engaged in the wheat trade at that place was to sell for cash or sight drafts; that they knowingly and voluntarily accepted the time check; that defendant did not consent thereto; and that plaintiffs were guilty of a want of ordinary business prudence in connection with the check. It was admitted at the trial "that the wheat delivered by Scoggins to the order of plaintiffs was of the value of six thousand dollars, and sufficient to cover note and expense of harvesting and marketing."

Respondent claims that the plaintiffs, by failing to sell the property in the mode provided by the Civil Code, sections 3002, 3003, and 3005, and by selling it at private sale, were guilty of a conversion.

The first mortgage made no express provision for a sale of the property except such as is implied by law.

The second mortgage authorized the plaintiffs, upon default in payment of the note at maturity, to take possession of the property and to sell the same as by law provided.

Scoggins, the mortgagor, had a right to waive his privilege of having the property disposed of in a given manner; and while the jury finds he did not consent to the sale to Mansfield, we think it is apparent from the general tenor of the evidence, his own included, that he delivered the wheat to plaintiffs to be sold in the usual manner known to merchants dealing in a like article.

But we think the plaintiffs, by their negligence in delivering the wheat, which they had contracted for cash without receiving payment, and in accepting a time check in violation of the usual custom of merchants, took upon themselves the risk of non-payment, and rendered themselves liable for the sum of money which they ought to have received, and which but for their own carelessness they would have received. The loss was occasioned by their negligence; and though burdensome and grievous to bear, it is more in consonance with justice that they who, by stepping aside from the beaten track known to those in the trade to lead to safe results, have brought about the loss, should suffer, than that defendant Ely, who, though a principal debtor had nothing to say or do in the matter, should be called upon to make good such a loss, incurred under such circumstances.

There was no error by which plaintiffs were injured, in the action of the court in sustaining the objection to plaintiffs' question put to the witness L. D. Stephens, as to the capacity in which he regarded Mr. Ely, in delivering him (Scoggins) that money, whether as he signed himself, or in some other capacity.

The object of the question was, no doubt, to show that

the witness, who was one of the plaintiffs, regarded Ely as a principal upon the note. The jury found in effect that Ely was a principal upon the note, and not a surety merely. As this was all plaintiffs could ask, they were in no wise injured by any adverse rulings of the court upon the question. It is proper, however, to say that the court below allowed the witness to state the facts tending to show that plaintiffs looked to Ely as a principal, and not as a surety.

The instructions given by the court were in the main correct expositions of the law applicable to the case made by the testimony, and we find in them no error sufficient to call for a reversal of the judgment, and are of opinion the judgment and order denying a new trial should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Rehearing denied.