[Civ. No. 177. First Appellate District.—March 19, 1906.]

## DAVID WAGNER, Appellant, v. THEODORE WEDELL, Respondent.

AGENCY—ASSIGNMENT OF SECOND CHATTEL MORTGAGE TO FIRST MORT-GAGEE FOR COLLECTION—AGREEMENT FOR FORECLOSURE AND BID— DUTY OF AGENT.—Upon an assignment by the owner of a second chattel mortgage to a first mortgagee under a power of attorney for collection, and with an agreement that the first mortgagee would foreclose them together, and bid enough to cover both mortgages, the first mortgagee was the agent of the second mortgagee, and it was his duty to act in the utmost good faith for the interests of the principal, and not adversely to him; and the second mortgagee, as principal, had the right to rely upon the judicial sale agreed upon with his agent.

ID.—BREACH OF DUTY BY AGENT—ACQUISITION AND SALE OF PROPERTY— SATISFACTION OF MORTGAGES—LIABILITY TO PRINCIPAL.—Where the first mortgagee, as agent of the second mortgagees, instead of complying with the agreement to foreclose them, acquired the title from the mortgagor, and satisfied both mortgages of record and

then sold the property for an amount in cash equal to the principal of the second mortgage, and took a mortgage equal to his first mortgage, and another mortgage to a third person, he is liable to his principal for the amount due on his original second mortgage, with interest thereon from the date of the sale.

ID.—ESTOPPEL TO DENY SALE FOR MONEY.—In such case the first mortgagee who sold the property and took notes and mortgages for part of the purchase price, is estopped, as to the principal, from saying that those notes and mortgages were not money; whether it was all in money, or that which as to his principal ought to have been money, is immaterial; and he is responsible to his principal for money had and received, who is not required to pursue the mortgage taken by the agent.

ID.—MONEY HAD AND RECEIVED.—An agent, who discharges the obligation of his principal, and substitutes other securities therefor in his own name or in the name of a third person, is liable to the principal, on the common count for money had and received to his use, whether he has actually received any money or not.

ID.—SUFFICIENCY OF COMPLAINT—ERROR IN NONSUIT.—A complaint charging defendant, as agent of the plaintiff, with having sold plaintiff's note and mortgage for a sum specified for and on account of plaintiff, that although demand has been made, defendant has not paid to plaintiff the said sum specified, or any part thereof, states a cause of action; and when the plaintiff's proof entitles him to recovery, the plaintiff's evidence must be taken as true for purposes of a motion for a nonsuit, and it was error to grant such motion.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Reed & Haskins, for Appellant.

Edgar D. Peixotto, for Respondent.

COOPER, J.—Upon the close of plaintiff's testimony the court granted defendant's motion for a nonsuit, and judgment was accordingly entered. Plaintiff appeals from the judgment and order denying his motion for a new trial.

The evidence shows substantially the following facts: On July 22, 1903, Lucien Blum and Peter Verdon executed to de-

fendant a chattel mortgage on the furniture, household goods and kitchen and dining-room wares, contained in a building known as 41 and 45 Stockton street, to secure the payment of a promissory note for $1,500 and interest to accrue thereon. On the same day the same mortgagors executed and delivered to plaintiff a second chattel mortgage on the same property to· secure a promissory note for $1,000, besides interest. Both mortgages were properly recorded. Afterward, the mortgagors being in default in the payment of interest, the defendant went to the plaintiff and asked him to assign his mortgage to defendant for convenience, so that defendant could foreclose both mortgages in the one action. It was finally agreed that the plaintiff should assign his mortgage to the defendant, and that the defendant should immediately commence foreclosure proceedings, and pay plaintiff out of the proceeds of the sale under foreclosure. The plaintiff told defendant at the time of the assignment that he would bid in the property for enough to cover both mortgages. The assignment was in writing, and contained the following clause: "And hereby appoint the said Theodore Wedell my true and lawful attorney irrevocable, in my name or otherwise, to have, use, and take all lawful means for the recovery of said note, money and interest." It was duly acknowledged, and was afterward placed upon record at the request of the defendant. At the time of making the assignment the defendant gave to plaintiff the following writing: .

"San Francisco, Oct. 8th, 1903.

"One day after date I, Theodore Wedell, promise to pay to David Wagner, the sum up to one thousand dollars in gold coin, out of the sale of the rooming-house known as 41 and 45 Stockton street, San Francisco, Cal., after gaining possession of the same.

"THEODORE WEDELL.

"Witness:
      "GEORGE PATTISON."

Plaintiff asked the defendant about the words of the writing "up to one thousand dollars." Defendant replied: "Well, that is only a matter of form. That is all right.

You will get your money as soon as the foreclosure is made."
Plaintiff replied that he would bid in the property to the
amount of both mortgages. On the twelfth day of October,
1903, the defendant, being the owner of the first mortgage,
and the owner of record of the second mortgage, had both
said mortgages satisfied of record. Although the evidence
does not show it, the defendant evidently had procured the
title from the mortgagors at the time he had the mortgages
satisfied, for he afterward sold the property and dealt with
it as his own. Defendant sold the property afterward, the
date not being shown, to George P. Beck and wife, and re-
ceived therefor $1,000 in money, and a note for $1,500, in
his own favor, secured by a mortgage upon the same property,
and also a note for $1,350, executed in favor of A. C. Blum,
secured by a second mortgage upon the same property. The
defendant, in satisfying the former mortgages of record, in
selling the property to Beck and wife, and in taking the
second set of mortgages from Beck and wife, acted without
the consent or knowledge of the plaintiff. In fact, after
plaintiff had heard of the sale from other sources and asked
defendant about it, defendant did not state the facts, but said
to plaintiff, "There is a sale on, but it had not been con-
summated." Afterward in a conversation with plaintiff as
to the mortgage to Blum, defendant said: "There has been
a good deal of crooked business done up in the real estate
office, and that second mortgage I know nothing about, any-
thing more than it is put there. It is a fictitious name that
was put there as a bluff." When plaintiff asked the de-
fendant as to the money coming to him defendant said:
"Everybody in this country has got to look out for himself
and do the best he can." Plaintiff has not been paid.

We are of the opinion that the defendant is liable to the
plaintiff for the $1,000, and the interest that was due thereon
at the time the property was sold by defendant, less the $10
paid plaintiff when he assigned his mortgage to defendant,
and legal interest on such sum since the said sale. The de-
fendant was the agent of plaintiff "to take all lawful means
for the recovery of said note, money and interest." As
such agent it was his duty to act in the utmost good faith for
the interests of his principal. He had taken the assignment

for the purpose of foreclosing both mortgages, and under an express statement by plaintiff that at foreclosure sale he would bid in the property for an amount sufficient to cover both mortgages. He had been made the plaintiff's agent to foreclose the plaintiff's mortgage, and to recover the money and interest due thereon. Plaintiff had the right to rely upon defendant, and it was the duty of the defendant to act within the scope of his agency for the interest of his principal, and not adversely to him. If defendant had proceeded to foreclose the mortgages, he would have had the right to a decree that his own mortgage and costs be first paid, and then the balance to be applied to plaintiff's second mortgage. If defendant had so foreclosed, and the property had only sold for enough at judicial sale to pay the amount due to defendant, he would not have been responsible to plaintiff; but plaintiff had the right to rely upon a judicial sale before he could be deprived of his security without payment of the amount due him. Defendant satisfied and canceled the mortgage held by plaintiff without plaintiff's consent. He did this to clear his own title to the property. He then sold the property, without consulting the plaintiff, and apparently for a sum more than sufficient to pay both himself and the plaintiff; and, even if he did not, he had no right to satisfy and cancel the mortgage of the plaintiff without becoming liable to plaintiff for the amount due him. When defendant sold the property, and took notes and mortgages for part of the purchase price, he was thereafter estopped as to plaintiff from saying that such notes and mortgages were not money. He sold the property and was paid for it. Whether it was all in money or that which, as to plaintiff, ought to have been money, makes no difference. He is responsible to plaintiff for money had and received, for the reason that he is estopped from saying that he did not sell for money. Defendant's main argument is to the effect that plaintiff has mistaken his remedy, and that defendant is not responsible for money had and received under the common counts, but that plaintiff's only remedy is by pursuit of the mortgages taken by defendant. We are not inclined to look with favor upon such contention. It certainly would not be in furtherance of honesty and fair dealing between man and man. In

*Moses* v. *McFarlan*, 2 Burr. 1005, Lord Mansfield said, in speaking of the action for money had and received: "One great benefit which arises to suitors from the nature of this action is that plaintiff need not state the special circumstances from which he concludes that, *ex aequo et bono,* the money received by the defendant ought to be deemed to belong to him. He may declare generally that the money was received to his use, and make out his case at the trial. This kind of action to recover back money which ought not, in justice, to be kept is very beneficial, and therefore much encouraged. It lies for money paid by mistake, or upon a consideration which happens to fail, or extortion, or oppression, or an undue advantage of the plaintiff's situation, contrary to the laws made for the protection of persons under these circumstances." The above quotation was referred to with approval by our own court in *Minor* v. *Baldridge*, 123 Cal. 190, [55 Pac. 783], where it was said that it is well established in this state that the common counts in *assumpsit* may be used, and that at common law such counts could be used to recover money obtained by false and fraudulent representations.

In *Floyd* v. *Day*, 3 Mass. 403, [3 Am. Dec. 171], it was held that where an agent compromises a demand of his principal, by receiving from the debtor a negotiable note, indorsed specially to the agent, an action for money had and received will lie. In the opinion it is said: "In fact, when the defendant, instead of money, received this note of Pilsbury, and discharged him, the property of the note was in the defendant, and he became immediately answerable to the plaintiff for the amount of the liquidated damages, which made a part of the consideration of the note, as so much money received by him to her use, and an action of *assumpsit* is her proper remedy. For, although the defendant received no money, yet by this transaction he discharged Pilsbury from the plaintiff's demand on him, for money, and he must be considered as having made himself answerable to her for the money he ought to have received from Pilsbury." *Floyd* v. *Day* has everywhere been regarded as authority on the proposition that, in such case, an action for money had and received will lie. Under the rule in that case, when the defendant in the present case, instead of foreclosing the mortgages, or instead of re-

ceiving the money on the sale, released plaintiff's mortgage and received the $1,000 and the mortgages of Beck and wife, he became immediately chargeable to plaintiff as for so much money received to the use of plaintiff. The same rule was laid down in *Beardsley* v. *Root,* 11 Johns. (N. Y.) 464, [6 Am. Dec. 386], where it was held that such action would lie, even though the defendant had received no money, but had wrongfully discharged a debt due his principal in payment of his own debt. It is there said: "The general rule indisputably is, that the action for money had and received cannot be supported unless the defendant has actually received money. It has, however, been held in the English courts that taking negotiable paper is equivalent to the receipt of money. . . . Here the attorney or agent has discharged a debt due to his principal, and applied that debt to the payment and satisfaction of his own debt, for the amount of which he is liable to the plaintiff in this form of action."

In *Bullard* v. *Hascall,* 25 Mich. 132, it was held that such action would lie even though defendant did not receive any money. It is there said: "But it is objected, by the counsel for plaintiff in error, that *assumpsit* for money had and received could not be maintained by the plaintiff, because there was no evidence that the defendant actually received the money for the draft. To this objection there are two sufficient answers: First, as the evidence clearly shows that the draft, which belonged to the plaintiff, came to the defendant's possession, who gave a receipt for it in the name of the firm, and thus discharged the government from liability for the claim, and thereby cut off the plaintiff's remedy against the government, and then, instead of handing it over to the plaintiff, or procuring the money upon it and paying it over to him, that he wrongfully deprived the plaintiff of the opportunity of obtaining the money upon it, and wrongfully enabled another party to obtain it, it does not now lie with him to deny that he had himself received the money, whether he did in fact receive it or not. It was his duty, as between himself and the plaintiff, if he disposed of it at all, to have obtained the money for it, and to have paid it over to the plaintiff; and if he chose to dispose of it without obtaining the

money, the disposition being wrongful as against the plaintiff, he is estopped to deny that he received the money.'' In *Thompson* v. *Babcock*, Brayt. (Vt.) 24, the plaintiff, having mortgaged a lot of land, executed a deed of the same land to Burbank, and delivered the deed to Babcock to enable him to dispose of the same and pass the title to a purchaser. Babcock, on disposing of the land as plaintiff's agent, took notes of hand against a third person and a quantity of paper instead of money. The court held that defendant was not authorized to sell for anything but money, and having done so he was liable on the common counts for money had and received. In *Andrew* v. *Robinson and Others*, 3 Campb. 199, it was held that where an insurance broker had received credit in account with an underwriter for a loss upon a policy, and had thus deprived his principal of all remedy against the underwriter, the action for money had and received would lie, and Lord Ellensborough held that defendants ''were estopped from saying that they had not this sum in their hands for the plaintiff's use.''

The complaint states facts sufficient to constitute a cause of action. It charges the defendant, as agent of the plaintiff, with having sold the plaintiff's note and mortgage for $1,000 for and on account of plaintiff; that, although demand has been made, the defendant has not paid the plaintiff the said sum of $1,000 nor any part thereof. If the defendant sold the plaintiff's note and mortgage for $1,000, and did not receive the $1,000, he should have received it. What has been said relates to the ruling on the motion for a nonsuit, and in such case we must regard all the plaintiff's evidence as being true for the purposes of the motion.

The judgment and order are reversed.

Harrison, P. J., and Hall, J., concurred.