**CERMETEK, INC., a corporation,**
**Appellee,**

v.

**BUTLER AVPAK, INC., a corporation,**
**et al., Appellants.**

No. 76–1632.

United States Court of Appeals,
Ninth Circuit.

May 3, 1978.

Jerry K. Cimmet (argued), of Miland & Cimmet, San Francisco, Cal., for appellants.

Arthur J. Shartsis, of Shartsis, Friese & Niesar, Gary A. Greenfield (argued), San Francisco, Cal., for appellee.

Before BROWNING and TRASK, Circuit Judges, and FREY,* District Judge.

FREY, District Judge.

Cermetek, Inc. entered into a series of eight C.O.D. (collect on delivery) contracts with Butler Avpak, Inc., a freight forwarder, to ship electronic parts from Cermetek in California to Digital Time Products, Inc. in New York. Butler Avpak, Inc. (hereinafter Avpak) breached the contracts by delivering the goods to Digital in return for company checks instead of demanding cash, certified check or money order. When these checks were dishonored, Avpak stopped payment on its outstanding checks to Cermetek. As a result, Cermetek has not been paid for six shipments, totalling $23,163.

This appeal is brought by Avpak from a summary judgment awarding Cermetek damages measured by the price or sum to be collected. Avpak contends that there are two contractual limitations of liability, that even without such limitations the proper amount of damages depends on genuine factual issues as to the collectibility of the price and value of the goods, and that it should be allowed to assert a prior debt owed by Cermetek to Digital as a setoff. Avpak also appeals from the denial of its motion for change of venue to the Eastern District of New York. Liability is not contested in this Court. We affirm.

## BACKGROUND, FACTS AND PROCEDURE

All eight shipment contracts were entered into between December 11, 1974 and December 26, 1974. The airbills covering them contain this language:

"It is agreed and understood that the liability of Avpak is limited to $50 or the declared value on which insurance was paid, whichever is higher."

The box for "declared value" is blank on all of the airbills, as is the box for insurance charges, and the transportation charge is the same for each shipment, $57.40. However, the "shippers C.O.D." varies from $1,107.00 to $5,880.00, and the "C.O.D. fee" varies from $20.00 to $60.00.

The affidavit of Edward Buschman, an agent for Avpak who assisted in preparing the airbills, contains the following:

"11. I specifically asked Connie Wilcox (a Cermetek employee) at this time what the declared value for insurance purposes would be and what amount of insurance, if any, Cermetek wanted to secure. I asked for the declared value because the charge for insurance is computed on the basis of the declared value of the shipment.

\* \* \* \* \* \*

17. I never had any additional conversations with any Cermetek representatives about their reasons for declining insurance and declining to declare a value for insurance purposes on the shipments to Joe Gordon."

During this time Avpak operated under a tariff which is binding on the parties to this suit.[1] Rules 70 and 115 thereof provide that in consideration of the transportation charge, which is in part dependent on the declared value of the shipment, the total liability of forwarded shall not exceed $50.00 unless the declared value is higher and an additional transportation charge is paid.[2] Rule 135(A)(3) makes the declared

---

* Honorable William C. Frey, United States District Judge, District of Arizona, sitting by designation.

1. *Chicago & N. W. R. Co. v. Union Packing Co.*, 514 F.2d 30 (8th Cir. 1975); *Blair v. Delta Air Lines, Inc.*, 344 F.Supp. 360 (S.D.Fla.1972), aff'd, 477 F.2d 564 (5th Cir. 1973); *North Coast Mfg. Corp. v. Union Pac. R. Co.*, 185 F.Supp. 287 (D.Or.1960).

2. *Rule 70:* "In consideration of the charge for the transportation of any shipment, which charge, in part, is dependent upon the value of the shipment as determined pursuant to Rule No. 115, the shipper and all other parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of Rule No. 115 and that the total liability of the forwarder shall in no event exceed the value of the ship-

value of C.O.D. shipment also equal to $50.00.[3]

The tariff further provides that the charges for collecting and remitting the C.O.D. amount shall be $10 per $1000 or fraction thereof,[4] but that C.O.D. service will not be provided on shipments on which the amount to be collected on delivery exceeds $5,000.00.[5]

Avpak's obligation on C.O.D. shipments as set out by the tariff was to collect the full amount from the consignee in cash, certified check or money order without allowing any examination or trial of the goods. If the shipment was unclaimed or refused, it was to notify Cermetek and to hold the shipment awaiting Cermetek's disposal instructions. If no instructions were sent, Avpak could have reshipped to Cermetek at Cermetek's expense.[6]

Instead of following this contractual procedure, Avpak accepted company checks of Digital for all the shipments and sent its own company check to Cermetek for the shipper's C.O.D. for the shipments. Cermetek received and cashed one check for two shipments; thus payment for two shipments is not at issue.

On or about December 30, 1974, Avpak received notice that Digital's first check, which Avpak had accepted for two shipments, had been dishonored for insufficient funds and payment on the third through eighth checks received by Avpak from Digital, had been stopped. Avpak then stopped payment on its check to Cermetek dated December 27, 1974.

There is evidence that previous to this time Digital had complained about the quality of the electronic parts and that Cermetek had immediately notified Digital to return defective parts for replacement or refund. No parts were ever returned to Cermetek and no other action with respect to alleged defective parts has been taken by Digital.

ment as so determined, or $10,000.00, whichever is the least."

*Rule 115:* "Except as otherwise provided, a shipment shall have a declared value of $50.00 unless a higher value (not to exceed $10,000.00) is declared on the airbill at the time of receipt of the shipment from the shipper. If a higher value is so declared, an additional transportation charge of $.15 shall be required for each $100.00 (or fraction thereof) by which such higher value exceeds $50.00.

EXCEPTION: On shipments of furs the additional transportation charge required shall be $.25 for each $100.00 (or fraction thereof) when the value declared is no more than $1,000.00. When the value declared is in excess of $1,000.00 the additional transportation charge for that portion of the declared value in excess of $1,000.00 shall be $.50 for each $100.00 or fraction thereof, (not to exceed $10,000.00)."

3. *Rule 135(A)(3):* "In the absence of a declaration of value by the shipper on a C.O.D. shipment, the declared value will be determined in accordance with Rule No. 115."

4. *Rule 135(a)(8):* "For collecting and remitting the amount of the C.O.D., the following service charges will be made:

| When amount collected is: | The charge is: | When amount collected is: | The charge is: |
|---|---|---|---|
| $ 40 | $ 2.50 | $ 160 | $ 5.50 |
| 50 | 2.75 | 180 | 5.75 |
| 60 | 3.00 | 200 | 6.00 |
| 80 | 3.25 | 250 | 6.25 |

| When amount collected is: | The charge is: | When amount collected is: | The charge is: |
|---|---|---|---|
| 90 | 3.50 | 300 | 6.50 |
| 100 | 3.75 | 350 | 6.75 |
| 102 | 4.00 | 400 | 7.00 |
| 105 | 4.25 | 450 | 7.25 |
| 110 | 4.50 | 500 | 7.50 |
| 120 | 4.75 | 550 | 7.75 |
| 140 | 5.00 | 600 | 8.00 |
| 150 | 5.25 | 650 | 8.25 |

| When amount collected is: | The charge is: |
|---|---|
| $ 700 | $ 8.50 |
| 750 | 8.75 |
| 800 | 9.00 |
| 850 | 9.25 |
| 900 | 9.50 |
| 950 | 9.75 |
| 1,000 or over | 10.00 per $1,000 or fraction thereof. |

When the charge is not shown for the exact amount collected, the charge for next greater amount will apply."

5. *Rule 135(C)(2):* "C.O.D. (Collect on Delivery) service will not be provided on the following types of shipments:
2. Shipments on which the amount to be collected on delivery exceeds $5,000.00."

6. *Rule 135(A)(7):* "C.O.D. shipments refused or unclaimed by the consignee will be held subject to storage as provided in Rule No. 125. If written disposal instructions as prescribed in Paragraph 6(b) of this Rule are not received within thirty (30) days after notice has been given to shipper, such shipments will be returned to the shipper at his expense."

In New York, Avpak brought suit against Digital and on September 16, 1975, obtained default judgment for the entire amount of the dishonored checks. Before Digital's failure to file a responsive pleading, Joseph Gordon, Digital's General Manager, submitted an affidavit alleging that Cermetek owed Digital $10,000 for previous work but offered no additional facts. Avpak has not obtained any payment on the judgment against Digital.

Cermetek brought this action on July 14, 1975, in California Superior Court; Avpak removed it to District Court on the basis of diversity of citizenship.

When Cermetek moved for summary judgment, Avpak opposed on the same grounds it asserts on appeal and submitted affidavits in an attempt to create factual issues as to the collectibility of the C.O.D. amount and as to the value of the goods. The Gordon affidavit filed in the New York case was attached to the affidavit of Arthur Norden, the president of Avpak. Relative to uncollectibility, Norden's affidavit of October 14, 1975 adds nothing to that of Gordon except,

> "19. The suit filed by AVPAK against Digital in New York has been of little or no aid to AVPAK since, although a default against Digital has been taken, the Internal Revenue Service has seized all of Digital's assets. I understand that such assets only amount to approximately $2,600.00."

Gordon, the General Manager of Digital, averred on February 10, 1975:

> ". . . Last year our volume increased to more than THREE HUNDRED TWENTY THOUSAND ($320,000.00) DOLLARS and we were able to maintain a higher level of production with fourteen full-time employees (including three graduate engineers) and five part-time engineering consultants. Orders for the coming year already exceed ONE MILLION TWO HUNDRED THOUSAND ($1,200,000.00) DOLLARS and we are billing at a weekly rate of FIFTEEN THOUSAND ($15,000.00)

DOLLARS. We are a growing, healthy business that is just beginning to realize its potential in an expanding market.

> We are not insolvent and meet our obligations when due. We have never before been accused of fraudulent or deceitful practices and have an excellent reputation in the digital watch field.

> To be fully candid, we do owe some past Federal taxes, which resulted from inefficient management, however, we have been working out these problems while continuing to fulfill all contractual obligations."

Avpak also moved in the District Court for change of venue to New York in order to fully adjudicate the issues sought to be raised and the rights of all parties including Digital with respect thereto.

The District Court granted summary judgment to Cermetek for the unpaid C.O.D. and denied the motion for change of venue.

### $50.00 LIMITATION

■ It is beyond dispute that a carrier or freight forwarder may limit its liability so long as a choice of rates is offered which varies with the value of the property shipped. *George N. Pierce Co. v. Wells Fargo & Co.*, 236 U.S. 278, 35 S.Ct. 351, 59 L.Ed. 576 (1915). The same is true when the C.O.D. amount is stated but no excess value is stated and no excess charges are paid. *Eddie Dassin, Inc. v. Eastern Airlines, Inc.*, 501 F.2d 74 (9th Cir. 1974).

The District Court held that the declared value and, therefore, the limitation of liability was inextricably tied to insurance and to the risks protected by insurance such as loss or damage, and did not cover or limit the risk of failure to abide by the contractual C.O.D. obligation. Avpak argues against this reasoning and points to *Eddie Dassin, supra*, in which the breach was a two-month delay in delivery, not a loss or a damage. In support of the District Court's holding, it should also be noted that excess declared

value causes an increase not only in insurance, but in the transportation charge as well. The charge which does not depend on declared value in any way is the C.O.D. fee.

■ An examination of the nature of a C.O.D. contract explains the independence of the C.O.D. fees from insurance and transportation charges. A carrier who enters into a C.O.D. contract is acting in two separate capacities.[7] The first is that of a common carrier and bailee. As such, he has all of the common law duties: to receive, transport, care for and deliver goods. These are the duties in all carriage contracts. The second capacity is either that of an agent of the shipper to collect or that of an agent to sell. By such C.O.D. contract, the carrier assumes a duty he would not have under the common law. Breaches of the two different sets of duties call for different measures of damages.[8]

■ In this case it is clear that Avpak charged separately for the separate duties it undertook. The transportation charges and the insurance charges were paid in consideration for the carriage contracts, and the amounts of those charges varied directly with "declared value". The C.O.D. fees were paid in consideration for the C.O.D. service, and the amount of the fees varied directly with the amount to be collected. The only rational conclusion must be that Avpak's liability was limited to $50.00 for breach of the carriage portion of the contracts but was not so limited for breach of the C.O.D. portion.

*Eddie Dassin, Inc. v. Eastern Airlines, Inc., supra,* is consistent with this conclusion.

### $5000.00 LIMITATION

■ The governing tariff was clear that C.O.D. service would not be provided on shipments for which the amount to be collected on delivery exceeded $5,000.00. On the sixth and eighth shipments the shipper's C.O.D. was $5,880.00 each, and the total amount to be collected on delivery was $5,997.40 each. Avpak argues that these facts preclude Cermetek from recovering anything as to those two shipments.

After holding that a valid tariff forms a part of the contract, that it has the force of law and that a carrier lacks authority to waive tariff requirements, the District Court, nevertheless, gave judgment for the full amounts to Cermetek because Avpak had obtained judgment against Digital in New York, and a judgment for anything less in this suit would result in unjust enrichment to Avpak. On appeal, Avpak complains only that a worthless judgment is no unjust enrichment and that there was thus a genuine factual issue as to the collectibility of the judgment. Cermetek counters that there was no evidence in the case below that the judgment was uncollectible, that the issue was not even raised below and that the issue is irrelevant to its rights.

Avpak clearly asserted that the judgment was worthless during oral argument before the District Court. (The issue of unjust enrichment was not raised until Cermetek's reply brief in support of summary judgment.)

We concur with the trial Court that there was no genuine issue properly raised as to the collectibility of Avpak's judgment against Digital, and that there would thus be unjust enrichment if Cermetek were limited to a recovery of $5000 on the two shipments which exceeded that sum.

In arriving at this conclusion, we must consider whether the affidavits taken in a light most favorable to Avpak create an issue of fact as to the worth of the judgment against Digital. Twenty-eight days *after* the judgment against Digital, Arthur Norden, then President of Avpak, stated in his affidavit that the judgment had been of little value since the I.R.S. had seized all of Digital's assets. This is the only "evidence"

---

**7.** *National Van Lines, Inc. v. Rich Plan Corp.,* 385 F.2d 800 (5th Cir. 1967); *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.,* 247 N.Y. 20, 159 N.E. 708 (1928).

**8.** *Id.*

that the judgment is worthless.[9] The Gordon affidavit signed seven months *before* the New York judgment, establishes that Digital was not insolvent at the time and that it met its obligations when due; even though he admitted that Digital was having problems with federal taxes. This admission, even combined with the later Norden affidavit, does not create either a genuine issue of fact nor a proper inference that Digital was no longer solvent and not meeting obligations when due. Summary judgment was properly granted as to the two shipments over $5,000.00. The entire judgment of the District Court can be affirmed merely on the theory of unjust enrichment; however, there are alternative reasons for affirming which are more important.

## MEASURE OF RECOVERY

In order to lessen the recovery, Avpak alleged that the C.O.D. amount was uncollectible at the time the goods were delivered and that the actual value of the goods was substantially below the C.O.D. amount.

■ The law is clear that the prima facie damages for breach of the C.O.D. contract to collect the C.O.D. amount *is* the C.O.D. amount. However, there is some authority, most of it dicta, that the carrier may mitigate damages by proving the impossibility of collecting the C.O.D. sum in cash. *National Van Lines, Inc. v. Rich Plan Corp.*, 385 F.2d 800 (5th Cir. 1967); *Herrin Trans. Co. v. Robert E. Olson Co.*, 325 S.W.2d 826 (Ct.Civ.App.Tex.1959); *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.*, 247 N.Y. 20, 159 N.E. 708 (1928); 57 A.L.R. 934. *Joseph Mogul, Inc.* states that if the amount collectible is less than the C.O.D. amount, the shipper can obtain only actual damages, i. e., the amount which could have been collected if the duty had been fulfilled, not necessarily the value of the goods. If the C.O.D. amount is collectible, the value of the goods is irrelevant. *Id.*

The District Court here found no factual issue as to collectibility and, therefore, gave judgment for the entire C.O.D. amount. It based this finding on the affidavit of Joseph Gordon quoted previously.

■ Avpak argues that Norden's assertion that the judgment was worthless in September of 1975, the inference supporting the assertion and the fact that one of the checks from Digital "bounced" create an inference that the C.O.D. amount was uncollectible in December of 1974. The District Court disagreed characterizing the Norden affidavit as mere "opinion". This was a proper characterization.

Federal Rule of Civil Procedure 56(e) states:

"(e). Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith . ."

The Norden affidavit recites:

"1. I am the president of Butler Avpak, Inc. and as such have personal knowledge of the facts set forth in this affidavit or have obtained knowledge of said facts from records and reports of employees of Butler Avpak, Inc., which are prepared and kept in the ordinary course of business and over which I have custody and control.

. . . . .

19. The suit filed by AVPAK against Digital in New York has been of little or no aid to AVPAK since, although a default against Digital has been taken, the Internal Revenue Service has seized all of Digital's assets. I understand that such assets only amount to approximately $2,600."

---

**9.** The value or weight to be given this affidavit is discussed later on in this opinion with respect to the measure of recovery.

The preface "I understand" is very different from the normal positive assertions used in the rest of the affidavit, even though many of the assertions are of facts Mr. Norden could only have gained knowledge of through unrevealed records or hearsay. Similar prefaces such as "I believe" are used only when Mr. Norden gives a legal opinion or predicts the future. Those facts alleged on "understanding" like those based on "belief" or on "information and belief", are not sufficient to create a genuine issue of fact. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *State of Washington v. Maricopa County,* 143 F.2d 871 (9th Cir. 1944), *cert. den.* 327 U.S. 799, 66 S.Ct. 900, 90 L.Ed. 1024.

If Mr. Norden gained knowledge through business records or post trial discovery that Digital's assets had all been seized by the I.R.S., he should have attached copies of the "papers or parts thereof referred to" in his affidavit so as to properly support his conclusion. It was Avpak's duty to show affirmatively that the affiant was competent to testify about Digital's financial status; all we have here is a bare assertion. The lower court no doubt concluded that Mr. Norden's bare assertions were not competent evidence under the circumstances or that he was not competent to testify as to the contents of such documents even though he may have been able to lay the foundation for their admission.

The mere fact that a single check bounced does not create an inference that Digital could not have paid the C.O.D. price. Neither does the fact (even if we could consider it such) that the I.R.S. has seized all of Digital's assets. Again, this is a bare unsupported assertion. Further, I.R.S. seizure does not warrant a conclusion that none of the such seized assets will be returned. While all doubt must be resolved in favor of the party opposing the motion for summary judgment, e. g., *Dalke v. Up-John Co.,* 555 F.2d 245 (9th Cir. 1977), there was not sufficient evidence before the Judge for us to say that he should have had a doubt as to the ability of Digital to pay the C.O.D. sum. The trial Court was correct in the disposition of this issue.

There was some evidence that the goods were defective; however, the rule stated in *Mogul,* even if we were to follow it, would not come into play without a prior determination that the C.O.D. sum was uncollectible. Moreover, *Mogul* is not controlling here and summary judgment was proper.

## DISCUSSION

The issues here raised by Appellant are matters of first impression in California. The question in this diversity case thus becomes whether California courts would follow the *Mogul* rule in this case. This Court concludes that they would not.

As reviewed in 27 A.L.R.3rd 1320, 1327, the early case law seems clear that when a C.O.D. carrier defaults in a clear contractual obligation to collect a sum certain in cash on delivery of consigned goods, the carrier is liable for the stated value of the goods. A defaulting carrier cannot raise as a defense or in mitigation of damages, in the ordinary case, any issue as to the true or market value of the goods or that the consignee could not have paid for them (uncollectibility).

The principle of law involved is most clearly set out in *Rolla Produce Co. v. American Ry. Express Co.,* 205 Mo.App. 646, 226 S.W. 582 (1920). "We need not discuss at length the nature of the liability incurred by a carrier, who delivers goods to the consignee without collecting the amount specified in the C.O.D. contract. Even if such carrier can be sued in conversion, as some cases hold, the obligation arises from contract, and the amount of recovery is the contract amount, and not the value of the property."

Then in 1927 in *Joseph Mogul Inv. v. C. Lewis Lavine, Inc.,* 247 N.Y. 20, 159 N.E. 708, 57 A.L.R. 934 (the case relied upon most heavily by Appellant), the Court, while paying lip service to such clear legal principle, engrafted thereupon an aberration that the consignee, while still liable to consignor for the default, was liable as any other "collection agent" for whatever could

have been collected if the duty had been fulfilled. This holding misconceived the role of the carrier and diluted the carrier's liability, thus seeming to have spawned much needless litigation advantageous to defaulting carriers and detrimental to the rights and interests of an otherwise faultless consignor.

In *Mogul* the Court decided that the defaulting carrier was liable to the shipper, but not necessarily for the C.O.D. amount. Concluding that the C.O.D. carrier was liable only as any other agent for collection, the Court stated in support of such conclusion:

"We think, however, that the amount is not a debt or other liquidated claim, but is measured by the damage.

"The subject has been much considered in actions *against banks* for negligence or other default in the collection of *commercial paper*. Prima facie, the amount of the damage is the amount to be collected."

(Emphasis Added)

This amounted to nothing more than an erroneous and unwarranted analogy by the Court between the duty, responsibility and liability of an agent-for-collection of commercial paper and that of a C.O.D. carrier. The Court cited nothing as authority for its conclusion that this principle of law applicable to commercial paper should be applied to C.O.D. carriers.

For an example of acceptance of this questionable engraftment without properly analyzing it, see *National Van Lines v. Rich Plan Corp.,* 385 F.2d 800 (another case relied upon by Appellant), where the Court again seems to adopt the faulty commercial paper analogy and the agent-for-collection principle. The Court stated:

"The only remaining issue is whether the price of the goods was the correct measure of damages. As stated, the carrier can be liable for the amount which could have been collected had the contract been fulfilled. The cause of action is one for damages and not for a debt, however, and the damages must be measured by the amount of loss which the

consignor actually suffered by the breach. See *Mogul* and *Herrin, supra.* Once the consignor has shown that the goods were delivered and that the carrier failed to collect, a prima facie case is established that the amount to be collected is the correct measure of damages. See *Justin, supra.* At this point the burden shifts to the carrier to negate its liability. Exactly what the carrier may prove to thwart the consignor's recovery is unclear. Some courts seem to hold that the only element of mitigation the carrier can establish is that it was not reasonably probable that the price could have been collected even if the carrier had fulfilled his contract. *Barnhart v. Henderson,* 147 Neb. 689, 24 N.W.2d 854 (Neb.1947). Additionally, other courts characterize the breach as a conversion at the time of delivery and allow no mitigation. See *Blaisdell v. American Ry. Express Co.,* 56 N.D. 870, 220 N.W. 634 (1928); The Restatement of Agency § 402(h), but cf. *Pere Marquette Ry. Co. v. J. F. French Co.,* 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391 (1921). It would seem, however, that since the carrier's obligation is contractual, the general rules of mitigation of damages should apply so that the carrier could demonstrate that the seller had in fact suffered no loss. Cf. *Industrial Sugars, Inc. v. Standard Accident Ins. Co.,* 7th Cir. 1964, 338 F.2d 673. This general application of mitigation principles is justified by the majority rule which seems to measure damages by actual loss. See *Alice v. Taca International Airlines,* 134 So.2d 922, 923 (Ct.App.La.1961); *Justin, supra; Mogul, supra; Herrin, supra.* This factor would be relevant here since the carrier tendered the goods back to the consignor. The decisions indicate that the seller must resell the goods when he has an opportunity to sell them for the same price he expected to receive from the first sale. *Bryant v. Pennington,* 346 S.W.2d 367 (Tex.Civ.App.—Amarillo 1961, no writ).

"The record in the instant appeal does not permit a resolution of this issue. The

question stipulated by the parties is couched in 'either/or' language—that is, either the carrier gets his freight and storage charges or the consignor gets the $1,380. There was no attempt by the carrier to mitigate the damages by showing the present market value of the goods or the availability of other buyers. The decisions are clear that if only delivery and failure to collect the C.O.D. amount are shown, the damages will be assessed on that basis since it is the carrier's burden to rebut the consignor's prima facie case. See *Justin, supra.* This carrier has simply stipulated itself out of court.

"We have carefully considered the other arguments raised by appellant and find them without merit. Therefore, the judgment of the lower court is Affirmed."
*Id.* at 803.

■ Even if we can assume that this is a majority rule of damages, it is ill-founded; it has not been adopted by any California case and we choose not to follow. The better rule is the simpler one that proceeds on the theory that a C.O.D. carrier is an agent for the sale and delivery of the goods and for collection of the C.O.D. amount in cash, and denies to the carrier any opportunity for lessening of damages from the amount stated in the consignment contract by showing lesser value of the goods or uncollectibility; provided, of course, that there is no fraud and the consignor is utterly without fault and that there has been no waiver or ratification on the part of the consignor. See *Rolla Produce Co. v. American R. Exp. Co., supra; Barnhart v. Henderson,* 147 Neb. 689, 24 N.W.2d 854 (1947); *Herrin Transp. Co. v. Robert E. Olson Co.* (1959 Tex.Civ.App.) 325 S.W.2d 826; *Blaisdell v. American Ry. Express Co.,* 56 N.D. 870, 220 N.W. 634 (1928). Further, even the *National Van Lines* case, *supra,* supports this rule, notwithstanding the dictum to the contrary. The Court pointed out that "exactly what the carrier may prove to thwart the consignor's recovery of the C.O.D. value

is unclear". However, the fact situation in that case (the carrier tendered the goods back to the consignor) was clearly different from the facts at hand and thus made the Court's remarks as to mitigation of damages pertinent only to that fact situation.

Our holding is, we believe, straightforward. Based on the reasonable commercial expectations of parties entering into a C.O.D. contract, and on our perception of equity and fair play, we conclude that a carrier who delivers the goods into the consignee's possession in breach of its C.O.D. contract and who allows the consignee to dispose of them, should not be allowed to dispute the market value of the goods because of alleged defects. This conclusion carries out the clearly expressed terms of the contract in this case. It is clearly written to protect the seller from losing both the contract price *and* the goods at the same time.

The seller generally utilizes a C.O.D. contract because he either does not trust the buyer or does not intend to advance credit. If the seller trusted the buyer he could easily enter into any number of credit transactions. He could have the contract price forwarded through banking channels or the mail or make other arrangements for payment. However, when utilizing the C.O.D. method, the seller clearly indicates he wants liquid assets, not a contract claim against a distant buyer who may be insolvent, litigious, dishonest, or all three. A buyer is not bound to accept the goods and pay the C.O.D. amount, but when he does (perhaps only because he is desperate for the goods and can get them no other way) that ends the transaction. The seller has the full value he placed on the goods. If there is any dispute as to value or defects, that is another, separate issue and the buyer must sue or take other action against the seller, as provided in the Uniform Commercial Code, which gives the seller an opportunity to cure the tender [10] and to inspect and sample the goods.[11] The buyer must, in the meantime, hold the goods at the seller's

---

**10.** West's California Comm.Code § 2508.

**11.** West's California Comm.Code § 2515.

disposition if they are rejected,[12] particularize any defects whether rejected or not,[13] notify seller of claims for which seller may be liable over,[14] revoke acceptance without undue delay,[15] etc.

Under a C.O.D. contract properly adhered to by the carrier, if the buyer refuses to pay cash, the seller still has the goods at his disposal and may make other arrangements to dispose of his goods. In addition, if the seller suffers any loss he has a claim he can pursue against the defaulting buyer.

In any case, even if the goods are defective, the C.O.D. carrier is still paid a fee based on the C.O.D. price, not the actual worth of the goods. He is harmed not at all if the defects make the goods worth less than the original price. If the buyer receives defective goods, he must sue the seller and has no claim against the carrier.

The alternatives open to the seller, as above described, are the ones the seller and the carrier have specifically contracted for. Contrast them with the situation in which the seller is placed when the carrier acts as defendant did here and when the Courts then undertake to under-cut contractual rights and provide the remedy set out in *Mogul.* The seller, being wholly without fault, may be substantially harmed. The buyer has both the goods and the money, and there is no incentive for such a buyer to follow his U.C.C. obligations which make the measure of damages for defects quicker and surer. The seller, under the *Mogul* rule, must sue the buyer, whom he did not trust in the first place, and who may not be worth suing, or he has to sue the C.O.D. carrier who has every incentive to take the buyer's part against the seller by claiming that the goods are defective and that the action should really be heard on the buyer's home court. The C.O.D. carrier would, of course, argue that since the seller lost only the value of defective goods, he should recover only the value of defective goods (after a long, expensive legal battle). A carri-

er might also argue that the seller is in no worse position fighting the carrier before payment than it would have been fighting the buyer after payment. As demonstrated herein, such an argument is without merit and the plain, simple answer is that a seller shipping goods under a C.O.D. contract should get what he contracts for, not a protracted lawsuit where the carrier is afforded an opportunity to benefit from his breach of duty.

■ Avpak may not assert that the goods are defective. It must pay Cermetek the C.O.D. price with interest from the date it stopped payment on its checks to Cermetek. The C.O.D. carrier has no interest whatsoever in the alleged defectiveness of the goods and no standing to raise it. The buyer does not have any claim for defective goods against the carrier, and the carrier should not have such a claim or defense against the seller. Under such ruling, the carrier loses any incentive to abandon its duty to its principal and take the side of the buyer whom the principal apparently did not trust in the first instance. The carrier, under our ruling, has an incentive to fulfill the C.O.D. commitment and, in case of a wrongful delivery, to take proper means to importune the consignee for payment or the return of goods (as the defendant did in *National Van Lines, Inc. v. Rich Plan Corp., supra*).

The rule here enumerated recognizes there may be separate contracts between the seller and the buyer and also between the seller and the carrier. Also separate is the buyer's duty to pay the C.O.D. carrier for the goods received. In this case, the carrier, Avpak, has obtained judgment on this duty and if it wishes, it may obtain an assignment of Digital's rights under the purported claim against Cermetek and file suit accordingly.

There can, of course, be exceptions to the rule above stated. Fraud by the seller

---

**12.** West's California Comm.Code § 2602.

**13.** West's California Comm.Code §§ 2605 and 2607.

**14.** West's California Comm.Code § 2607.

**15.** West's California Comm.Code § 2608.

would be one. The facts in *National Van Lines* and some of the other cases cited give rise to a duty of the seller to mitigate and this may be another exception. Accidental loss or destruction of the goods after refusal of the buyer to pay, should perhaps be another exception. Such issues are not before us, so we leave resolution of such to future cases.

Our holding herein may also be supported by an additional line of reasoning based on an early California case of *Wagner v. Wedell*, 3 Cal.App. 274, 85 P. 126 (1906), dealing with estoppel.

We have previously stated that the New York Court in *Mogul, supra,* supported its conclusion as to the proper measure of damages by an analogy with the cases dealing with an agent to collect commercial paper. It is, therefore, proper to consider whether some case or cases in California provide a better or closer analogy to the case at hand.

In *Wagner v. Wedell, supra,* Wedell had a first mortgage on chattels to secure a $1,500 promissory note. Wagner had a second mortgage to secure a $1,000 note. When the mortgagor defaulted, Wagner assigned his mortgage to Wedell for purposes of foreclosure in return for which defendant, Wedell, promised to pay plaintiff $1,000 out of the proceeds of the foreclosure sale. Plaintiff said that he would bid enough to cover both mortgages.

Wedell proceeded to procure title from the mortgagors, to have both mortgages satisfied of record and to resell the property. On this resale he obtained $1,000 in cash, a note for $1,500 in his own favor secured by a mortgage on the same property, and a note for $1,350 executed in his favor. Plaintiff had no knowledge of the resale.

Even though Wedell had not promised in writing to sell at a foreclosure sale and even though Wagner had not promised to bid a sufficient amount to cover both mortgages, the agency relationship "to take all lawful means for the recovery of said note, money and interest" was held to bind defendant to act for the interest of his principal and not adversely to him. The Court

acknowledged that defendant could have sold at a foreclosure sale and could have paid himself first with plaintiff receiving less than his mortgage amount if the sale was not sufficient, but the dealings between the parties were held to give plaintiff

"the right to rely on a judicial sale before he could be deprived of his security without payment of the amount due him." *Id.,* 85 P. at 127.

Plaintiff sued for money had and received, and defendant claimed that the only remedy was on the mortgages taken on resale. The Court held:

"He then sold the property, without consulting the plaintiff, and apparently for a sum more than sufficient to pay both himself and the plaintiff; and, *even if he did not,* he had no right to satisfy and cancel the mortgage of the plaintiff without becoming liable to plaintiff for the amount due him. When defendant sold the property, and took notes and mortgages for part of the purchase price, he was thereafter estopped as to plaintiff from saying that such notes and mortgages were not money. He sold the property and was paid for it. Whether it was all in money or that which, as to plaintiff, ought to have been money, makes no difference. He is responsible to plaintiff for money had and received, for the reason that he is estopped from saying that he did not sell for money." (Emphasis Added)
*Id.*

Thus, applying this reasoning, the defendant in the present case is estopped from denying that it sold for money, and the issue with respect to defects in the goods is irrelevant; defendant must pay the shipper's C.O.D. price to plaintiff. We believe that if an analogy is necessary in this case, analogy to *Wagner* is closer than an analogy to the agent-for-collection cases cited in *Mogul.* In both *Wagner* and the present case, the defendants are agents with authority to sell an item of intrinsic value for money and *not otherwise.* In both cases the plaintiffs have agreed with

the defendants that the plaintiffs will accept the return of the property if the sale cannot be made on the terms agreed upon, i. e., Wagner would purchase the chattels and Cermetek would accept back its goods and even pay any further shipping charges. In contrast, an agent-for-collection is only "selling" the satisfaction of a debt, and the notes to be collected have no intrinsic value.

 Of course, other cases in California treat other closely analogous subjects, but none of them are clearly dispositive of the issues in this case. Agents to sell must normally sell for cash only, and are liable if they sell otherwise. *Harlan v. Ely*, 68 Cal. 522, 9 P. 947 (1886); *Leland v. Oliver*, 82 Cal.App. 474, 255 P. 775 (1927). However, in neither of these cases was the value of the property sold in dispute. The plaintiff obtained the contract price.

 By this alternative reasoning, we again conclude that a carrier who contracts to either collect cash on delivery or put the goods at the shipper's disposal, is estopped to deny receiving cash when a company check is accepted from the buyer. We recognize that *Wagner* deals with the common law action for money had and received, and even though we do not wish to allow the abolished forms of action to rule from the grave, the legal principle therein expressed is sound and alive. *Mogul* was based on the difference between an action for debt and an action for damages.

### SETOFF

 Defendant simply is in no position to claim as a setoff the claim which Digital alleges against Cermetek. It has not obtained an assignment of this alleged debt. Further, by the reasoning used herein, any debt which Cermetek may owe Digital is irrelevant. Defendant is estopped from denying that it received money for the goods. Also, the same policy reasons which preclude the carrier from raising the issue of defects, preclude any issue over alleged prior debts between seller and consignee. Setoff for "prior debts" cannot be accepted by a C.O.D. carrier in lieu of cash or to reduce full cash payment. Such is neither

in keeping with the contract a C.O.D. carrier makes with a seller nor consistent with the carrier's duty to the seller.

### CHANGE OF VENUE

 Digital is not a necessary party to this suit and since neither the defect issue nor the collectibility nor the setoff issues have a proper place in this litigation, the order denying change of venue is affirmed.

The judgment of the District Court is affirmed.